**RIBLET PRODUCTS CORPORATION,**
David Bistricer, and Nachum Stein,
Defendants Below, Appellants,

v.

Ernest J. NAGY, Plaintiff
Below, Appellee.

No. 139, 1996.

Supreme Court of Delaware.

Submitted: Sept. 10, 1996.
Decided: Sept. 26, 1996.

A. Gilchrist Sparks, III (argued), and David J. Teklits of Morris, Nichols, Arsht & Tunnell, Wilmington; Dennis J. Block, Richard W. Slack and Jason M. Halper of Weil, Gotshal & Manges LLP, New York City, of Counsel, for Appellants.

David C. McBride of Young, Conaway, Stargatt & Taylor, Wilmington; Bernard J. Nussbaum (argued), William T. Barker and Kenneth H. Hoch of Sonnenschein Nath & Rosenthal, Chicago, IL, of Counsel, for Appellees.

Before VEASEY, C.J., WALSH and BERGER, JJ.

VEASEY, Chief Justice:

In this certification proceeding we resolve a question of Delaware law certified to this Court by the United States Court of Appeals for the Seventh Circuit in accordance with Article IV, Section 11(9), of the Delaware Constitution and Supreme Court Rule 41. We consider whether or not majority stockholders of a closely-held Delaware corporation can be found to have breached a fiduciary duty owing to a minority stockholder who is also the chief executive officer ("CEO") of the corporation and thus an employee of the corporation under written contract when the dispute arises solely with respect to that employment contract. We hold that, although majority stockholders have fiduciary duties to minority stockholders *qua* stockholders, those duties are not implicated when the issue involves the rights of the minority stockholder *qua* employee under an employment contract. The duties of the corporation to the CEO are contractual. Whether or not the majority stockholders may have breached a fiduciary duty to Nagy *qua* stockholder or to the corporation is not before us. Accordingly, we answer the certified question in the negative.

### Facts

The following undisputed facts are set forth in the opinion of the Seventh Circuit. *Nagy v. Riblet Products Corp.*, 7th Cir., 79 F.3d 572 (1996). We will summarize only those facts which are relevant to the certified question.

Riblet Products Corporation ("Riblet") is a closely-held Delaware corporation with its principal place of business in Indiana. It manufactures components of "site-built" homes and recreational vehicles. In 1981, Riblet entered into an employment contract (the "1981 contract") with Ernest J. Nagy ("Nagy"), then Chairman, President, and CEO of Riblet. Nagy was also the owner of 14% of Riblet's stock. The 1981 contract stated in relevant part that if Nagy should be "discharged for any reason other than theft, disclosure of trade secrets, or 'similar dishonest acts,' he would receive 60 percent of his regular salary until he turned 62." *Nagy*, 79 F.3d at 573.

In 1986, David Bistricer, Nachum Stein, and their relatives (collectively the "Majority Stockholders") acquired an 85% interest in Riblet by means of a leveraged buy out. The new group of investors paid Nagy more than $3 million for his previous 14% interest, and Nagy acquired a 15% interest in the new corporation, the RPC Holding Corporation (the new "Riblet"). The Majority Stockholders also entered into a new employment contract (the "1986 Contract") with Nagy.

The terms of the 1986 Contract provide in relevant part that if Riblet terminated Nagy's employment for "cause" all benefits of the 1986 Contract would cease. The 1986 Contract defines "cause" as "conviction of a felony, fraud, dishonesty, illegal use of federally controlled substances, and/or misappropriation of [Riblet's] funds." The 1986 Contract further provides that if Riblet terminated Nagy's employment "other than for cause as defined herein" Nagy would receive "all salaries, benefits, bonuses, and other direct and indirect forms of compensation" for the remainder of his five-year term.

In 1990, Riblet fired Nagy, allegedly "because Nagy engaged in a series of self-dealing transactions with the firm (for example, he was an undisclosed principal in the group buying Riblet's headquarters building) and refused to follow explicit instructions issued by the board of directors (he wrote checks without the required approval, and he kept his personal secretary on the payroll after the board discharged her.)" *Nagy*, 79 F.3d at 574.

Nagy challenged the dismissal in the United States District Court for the Northern District of Indiana, alleging nine claims against Riblet and the Majority Stockholders. At the close of the evidence, the District Court permitted two of the claims to be submitted to the jury: a claim against Riblet for breach of Nagy's employment contract, and a claim against the Majority Stockholders for breach of their fiduciary duties as majority stockholders to Nagy, a minority stockholder.

The jury found that Riblet breached Nagy's employment contract, and awarded to Nagy $1,267,747 in compensatory damages. The jury also found that the Majority Stockholders breached their fiduciary duties to Nagy, and held them jointly and severally liable with Riblet for the compensatory damages award and assessed $375,000 in punitive damages against each of them.

The defendants appealed the verdict on both grounds.[1] The Seventh Circuit affirmed the verdict with respect to the breach of contract claim. *Nagy*, 79 F.3d at 575. Finding that Delaware law applied to the breach of fiduciary duty claim, the Seventh Circuit certified the following question of law to this Court pursuant to Delaware Supreme Court Rule 41(a)(ii):

> Whether majority shareholders in a Delaware corporation have a fiduciary duty of loyalty to a minority shareholder, who is also an employee under a written contract, with respect to issues affecting that employment.

---

1. Nagy also cross-appealed with respect to the claims on which he did not prevail. The Seventh Circuit affirmed the District Court's rejection of all claims raised by Nagy in his cross-appeal.

*Nagy,* 79 F.3d at 578. The Seventh Circuit noted in its respectful request for certification:

It may be that the Justices of the Supreme Court of Delaware will conclude that this is not the controlling question. In that event, the Justices should feel free to reformulate the question, just as they would when dealing with the issues posed in a case wholly within the state system. It is not our purpose to constrain the state court but only to suggest how we conceive of the issue.

*Nagy,* 79 F.3d at 578. This Court accepted certification. *Riblet v. Nagy,* Del.Supr., No. 139, 1996, Veasey, C.J. (Apr. 10, 1996) (ORDER).

In view of the invitation by the Seventh Circuit to reformulate the question, we respectfully suggest that it would be preferable if the question were to be restated as follows:

Whether majority stockholders of a Delaware corporation may be held liable for violation of a fiduciary duty to a minority stockholder who is an employee of the corporation under an employment contract with respect to issues involving that employment.

### Standard and Scope of Review

■ Since this Court is addressing a certified question of law, as distinct from a review of a lower court decision, this Court must review the certified question in the context in which it arises. *Rales v. Blasband,* Del. Supr., 634 A.2d 927, 931 (1993).

### Analysis

The proper starting point of the analysis of this issue is the substantive law of the State of Delaware. No current case law speaks directly to this issue. The Seventh Circuit noted:

The Supreme Court of Delaware has never addressed the question. *Ueltzhoffer v. Fox Fire Development Co.,* 1991 WL 271584 (Del.Ch. Dec. 19, 1991) (Berger, V.C.), affirmed, 618 A.2d 90 (Del.1992) [Del.Supr., No. 208, 1992, Moore, J. (Nov.

24, 1992) (ORDER) ], marks its closest approach to the subject. . . .

*Nagy,* 79 F.3d at 577. In *Ueltzhoffer,* a minority stockholder and employee of a closely-held corporation brought a breach of fiduciary duty claim against the majority stockholders based on his termination. Ueltzhoffer alleged that "his termination amounted to a wrongful freeze out of his stock interest in Drummond and Fox Fire Co." *Ueltzhoffer,* mem. op. at 16, 1991 WL 271584. Significantly, Ueltzhoffer did not have an employment contract with the corporation.

The Court of Chancery rejected Ueltzhoffer's arguments "that in close corporations profits frequently are taken out as salary and that termination of a minority stockholder's employment without a valid business purpose has been recognized as a breach of fiduciary duties in other jurisdictions" and should be recognized in Delaware. *Ueltzhoffer,* mem. op. at 16, 1991 WL 271584. The Court of Chancery reasoned:

There are two problems with the plaintiffs' argument. First, to the extent that there is some sort of "business purpose" test associated with the determination as to whether Ueltzhoffer's termination was wrongful, I find that defendants have established one. . . . Thus, I am not prepared to conclude that the Martas terminated Ueltzhoffer for the sole and improper purpose of freezing him out of the corporate entities.

[Second,] [a]s a matter of law, I am aware of no Delaware authority following [*Wilkes v. Springside Nursing Home, Inc.,* 370 Mass. 842, 353 N.E.2d 657 (1976) ] or applying *Wilkes* outside of the context of a close corporation.

*Ueltzhoffer,* mem. op. at 17, 1991 WL 271584. In *Wilkes,* the Supreme Court of Massachusetts held that majority stockholders of a closely-held corporation breached their fiduciary duty to a minority stockholder when they terminated his employment and refused to reelect him as a salaried officer and director. *Wilkes,* 353 N.E.2d at 661–64. *Wilkes* has not been adopted as Delaware law.[2]

---

2. The fact that Riblet is closely-held does not, for this purpose, alter the duties of stockholders *inter*

This is a case governed by an employment contract. Nagy actively and successfully pursued his contractual rights as an employee. These contractual rights are separate from his rights as a stockholder. *See Shaw v. Agri–Mark, Inc.,* Del.Supr., 663 A.2d 464, 470 (1995) (distinguishing between rights arising from contract and "the rights exclusively reserved for 'stockholders' under either Delaware common law or the Delaware General Corporation Law.").

This is not a case of breach of fiduciary duty to Nagy *qua* stockholder.[3] To be sure, the Majority Stockholders may well owe fiduciary duties to Nagy as a minority stockholder. But that is not the issue here. Nagy does not allege that his termination amounted to a wrongful freeze out of his stock interest in Riblet, nor does he contend that he was harmed as a stockholder by being terminated.[4] Moreover, this is not an attempt to bring a derivative suit by Nagy as a stockholder on behalf of the corporation for actionable injury to it arising out of the termination of the employment agreement.[5]

### Conclusion

The certified question is therefore answered in the **NEGATIVE.**[6]

---

se from those which prevail for publicly-held corporations. *Compare Nixon v. Blackwell,* Del. Supr., 626 A.2d 1366, 1380 (1993) ("One cannot read into the situation presented in the case at bar any special relief for the minority stockholders in this closely-held, but not statutory 'close corporation' ...") *with Stroud v. Grace,* Del. Supr., 606 A.2d 75, 86 (1992) (privately-held, non-public, corporation not registered under the Securities Act of 1933 nor subject to proxy requirements of the Securities Exchange Act of 1934 is governed solely by disclosure requirements of 8 *Del.C.* §§ 222 and 242 regarding amendment to certificate of incorporation).

3. Nor is this a case determined by a "business purpose" test. This Court rejected the "business purpose" test of *Singer v. Magnavox Co.,* Del. Supr., 380 A.2d 969 (1977), in *Weinberger v. UOP, Inc.,* Del.Supr., 457 A.2d 701 (1983).

4. "Nagy's own theory is that Bistricer and Stein fired him to reduce their risk under [certain] guarantees." *Nagy,* 79 F.3d at 575.

5. Such a derivative suit would be subject to the demand requirements of Court of Chancery Rule 23.1. *Grimes v. Donald,* Del.Supr., 673 A.2d 1207 (1996). In any event, "as the district court observed, no evidence at all suggests that Bistricer and Stein acted for any reason other than the proper one of increasing the corporation's profits and prospects." *Nagy,* 79 F.3d at 575–76.

6. In view of our resolution of the central issue in this case, we need not reach the other contentions argued by counsel in this Court.