Kern, J.

I. INTRODUCTION

The current action was filed on August 10, 2001, charging the defendants with breach of good faith (Count I), wrongful termination (Count II), intentional infliction of emotional distress (Count III) and negligent infliction of emotional distress (Count IV). John Cullinane (“Cullinane”), Jeffrey Robbins (“Robbins”), David Mahoney (“Mahoney”) and LiveData, Inc. (“Live-Data”) (collectively, the “Defendants”) move this court *726 to dismiss the complaint pursuant to Mass.R.Civ.P. 12(b)(1) and (6). For the following reasons, the Defendants’ Motion to Dismiss will be ALLOWED.

II. BACKGROUND

LiveData began as a partnership between George Clemmer (“Clemmer”) and Robbins in 1990. In 1991, LiveData was organized under the laws of Delaware and maintains a principal place of business in Cambridge, Massachusetts. It engages in the business of selling software for industrial use. When incorporated, Clemmer’s responsibilities were for sales and general business administration and Robbins’s were for software development.
Cullinane became LiveData’s Chairman of the Board in 1994, after purchasing a minority interest of outstanding shares. Robbins is presently LiveData’s President, a Director, has served as its Chief Executive Officer (CEO) and owns 36.25% of the outstanding stock. Mahoney was hired as a consulting CEO in 1997, and thereafter also became a Director and shareholder. Together, Robbins, Cullinane and Mahoney own 55% of LiveData’s outstanding shares.
Clemmer claims that, acting together as a majority interest, Robbins, Cullinane and Mahoney began a course of conduct in 1998 to effectively freeze him out of LiveData. The course of conduct he complains of included: (1) inducing Clemmer to sign a Director Action by Consent establishing an Executive Committee of the Board of Directors which did not include him, that would have the full authority of the Board to control management operations; (2) increasing his sales quota from $800,000 in October of 1998, to the unrealistic quota of $1.5 million; (3) reducing his annual salary from $125,000 in October of 1998, to $60,000 in May of 1999, less than Robbins’s; (4) relieving him of his sales management responsibilities; (5) terminating his employment without notice on June 18, 1999; and (6) denying him any meaningful participation in corporate affairs. Clemmer continues to be a minority shareholder and Director, holding 36.25% of the outstanding shares of LiveData.

III. DISCUSSION

The defendants seek to have the complaint dismissed pursuant to Mass.R.Civ.P. 12(b)( 1) and (6). For purposes of a motion to dismiss pursuant to Mass.R.Civ.P. 12(b), the factual allegations in the complaint must be treated as true and the plaintiff is entitled to all favorable inferences. General Motors Acceptance Corp. v. Abington Cas. Ins. Co., 413 Mass. 583, 584 (1992). A motion to dismiss should be granted only if “it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Id., quoting Nader v. Citron, 372 Mass. 96, 98 (1977). The court will generally not allow a motion to dismiss when the complaint can support relief on any theory of law, Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979), and all inferences should be drawn in the plaintiffs favor in the complaint “so as to do substantial justice.” Ourfalian v. Aro Mfg. Co., Inc., 31 Mass.App.Ct. 294, 296 (1991).
In support of this motion, the defendants claim: (1) Clemmer’s “freeze-out” claim is barred because Delaware law does not recognize such a claim and Delaware law applies; (2) Clemmer’s wrongful termination claim must fail because he was an at-will employee; and (3) Clemmer’s claims for intentional and negligent infliction of emotional distress are precluded by the Workers’ Compensation Act.

1. Clemmer’s “Freeze-Out” Claim

In Count I, Clemmer claims that the defendants breached their duty of good faith by wrongfully excluding him from the corporation (i.e., engaging in a corporate “freeze-out”). This claim is recognized under Massachusetts law, see Wilkes v. Springside Nursing Home, Inc., 370 Mass. 842, 848-49 (1976), but has not yet been decided under Delaware law. See Hollis v. Hill, 232 F.3d 460, 469 n.28 (5th Cir. 2000) (“the Delaware Supreme Court has yet to consider the precise issue in this case, namely whether a controlling shareholder is liable for actions taken with the purpose and effect of freezing out another shareholder”). It must first be determined, therefore, which law will apply to the present controversy.
LiveData is a “closely held” corporation organized under the laws of Delaware.[2] The Supreme Judicial Court has recently reaffirmed that the “law[s] of the State of incorporation [are applied] in matters relating to the internal affairs of a corporation (including closely held corporations), such as the fiduciary duty owed to shareholders." Harrison v. NetCentric Corp., 433 Mass. 465, 470 (2001). In Harrison, the SJC rejected the “one-factor” or “significant relationship” test that had been applied in Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 511 (1997). In Demoulas, the choice of law question was resolved using the “significant relationship” test because the corporation was originally formed as a Delaware corporation but had since been transformed into a Massachusetts corporation. In this case, LiveData was and is a Delaware corporation, and in accordance with the holding in Harrison, this court must apply Delaware law. Harrison, 433 Mass. at 471 (nothing in the Demoulas decision “suggested that we were overruling our long-standing policy of applying the law of the State of incorporation to internal corporate affairs”).
In Wilkes v. Springside Nursing Home, Inc., 370 Mass. 842 (1976), the SJC allowed a corporate freeze-out claim by a minority shareholder whose employment had been terminated. However, the Delaware Supreme Court explicitly addressed the application of the Wilkes holding under Delaware law and refused to adopt it. Riblet Prods. Corp. v. Nagy, 683 A.2d 37, 39 (1996).
Clemmer argues that if this court applies Delaware law, the reasoning in Minor v. Albright, 2001 U.S. Dist. *727 LEXIS 19436 (N.D.Ill. Nov. 28, 2001), applying Delaware law, should apply. In Minor, the U.S. District Court for Illinois applied a “fair dealing” standard to a corporate freeze-out claim, which was gleaned from Litle v. Waters, 1992 Del. Ch. LEXIS 25 (Del. Feb. 10, 1992). Id. at *8. The Minor court concluded that, “[flreezing out minority investors who expected to be involved in management could also arguably violate fair play. Plaintiffs have sufficiently alleged oppressive conduct, completely apart from any issues governed by the employment agreement.” Id. at *10. Similarly, Clemmer argues he has alleged sufficient facts demonstrating his intent to be involved in the management of the corporation, as well as the defendants’ oppressive conduct. The Minor court, however, ignores the language of the Delaware Supreme Court in Nixon v. Blackwell, 626 A.2d 1366 (1993), on the potential treatment of freeze-out claims by minority shareholders.
In Nixon, the court refused “to fashion a special judicially-created rule for minority investors when the entity does not fall within [the specially designated Delaware close corporation law]...” If the corporation has not been designated a close corporation under 8 Del. C. §342, which offers greater protections for the minority shareholder by permitting shareholder agreements and alternate governance arrangements, then the remedies available to a minority shareholder are few. Id. at 1380-81 (holding that the court will not create “any special relief for the minority stockholders in the closely-held, but not statutory ‘close corporation’ because the provisions of [8 Del. C. §342] relating to close corporations and other statutory schemes preempt the field in their respective areas”); see also, Harrison, 433 Mass. at 468-69 (“Delaware law does not impose the heightened fiduciary duty of utmost good faith and loyalty in a close corporation. See Riblet Prods. Corp. v. Nagy, 683 A.2d 37, 39”); Theresa L. Kelly, Nixon v. Blackwell: Fairness But Not Equality For Minority Shareholders, 19 Del.J.Corp.L. 533 (1994). In the present case, LiveData is a closely held corporation. It is not incorporated under the specially designated close corporation Delaware law. (8 Del. C. §341 et seq.)
Although a complaint may not be dismissed simply because it raises a “new theory of liability,” New England Insulation Co. v. General Dynamics Corp., 26 Mass.App.Ct. 28, 30 (1988), the Delaware Supreme Court in Nixon has specifically addressed the minority shareholder freeze-out claim indicating that it is not a new theory of liability and will not ultimately prevail. For this reason, Count I must be dismissed pursuant to Mass.R.Civ.P. 12(b)(6).

2. Wrongful Termination Claim

The Defendants next seek to dismiss Count n, which alleges that the Defendants wrongfully terminated Clemmer’s employment from LiveData. Even in an at-will employment contract, the employer is still subject to an implied covenant of good faith and fair dealing. Harrison, 433 Mass. at 473; Fortune v. National Cash Register Co., 373 Mass. 96, 104-05 (1977). As an employee at-will, the employee or the employer may terminate the employment relationship at any time and with virtually no reason for doing so. Jackson v. Action for Boston Community Dev., Inc., 403 Mass. 8, 9 (1988). As a result, the “employer is accountable to a discharged employee for unpaid compensation if the employee is terminated in bad faith and the compensation is clearly connected to work already performed.” Harrison, 433 Mass. at 473.
Here, Clemmer adequately alleges bad faith by the Defendants to withstand the motion to dismiss. Unfortunately, by his own admission Clemmer acknowledged having received all of the compensation due to him upon his termination. (Complaint ¶28.) Pursuant to the Harrison case this cause of action must be founded on both bad faith actions and compensation due that is “clearly connected to work already performed.” Id. at 473. Clemmer argues that because corporate dividends have not been paid to shareholders (and he is a shareholder), then he is owed compensation. In addition to the fact that dividend declarations are within the sound discretion of the corporate Directors, see Morse v. Boston & M.R.R., 263 Mass. 308, 312 (1928), it is important to note the distinction between compensation due to a shareholder versus compensation due to an employee. For purposes of the wrongful termination claim, the only compensation that is relevant is any owed to Clemmer. in his capacity as an at-will employee. As stated supra, Clemmer admitted (Complaint ¶28) that he received full compensation for “work already performed.” Harrison, 433 Mass. at 473. As a result, Count II has failed to state a claim upon which relief can be granted and it must be dismissed.

3. Intentional and Negligent Infliction of Emotional Distress

Lastly, the Defendants argue that the remaining counts, Count III (intentional infliction of emotional distress) and Count IV (negligent infliction of emotional distress), should be dismissed because the claims are barred by the Workers’ Compensation Act, G.L.c. 152, §24. The Workers’ Compensation Act preempts common-law intentional infliction of emotional distress claims when the injured party is an employee and the acts were committed in the course of employment. Green v. Wyman-Gordon Co., 422 Mass. 551, 558 (1996). As Clemmer was an employee of LiveData and complains of actions taken by the Defendants as employers, he is precluded from bringing a common-law emotional distress claim for his employers’ actions, which ultimately ended with his termination. See Mullen v. Ludlow Hosp. Society, 32 Mass.App.Ct. 968, 970, rev. denied, 413 Mass. 1103 (1992).
In his capacity as a shareholder, however, Clemmer is not precluded by the Workers’ Compensation Act from asserting a claim for intentional and negligent infliction of emotional distress. Clemmer must therefore allege: (1) the Defendants intended to, knew or *728 should have known that emotional distress was a likely consequence of their actions; (2) the Defendants’ actions were “extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community”; (3) the Defendants’ actions were the cause of Clemmer’s distress; and (4) Clemmer’s emotional distress “was severe and of such a nature that no reasonable person could be expected to endure it.” Kurker v. Hill, 44 Mass.App.Ct. 184, 193 (1998), citing Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466 (1997). In Kurker the Appeals Court affirmed the Superior Court’s dismissal of the plaintiffs intentional infliction of emotional distress claim because the complaint lacked sufficient factual allegations. Id. at 193. While this claim has apparently not been reviewed in the context of a minority shareholder freeze-out, this does not preclude the applicability of the enormous burden imposed by the elements of these causes of action.
The question is whether Clemmer has pled adequate factual allegations demonstrating the Defendants’ “extreme and outrageous” conduct, “beyond all bounds of decency and utterly intolerable in a civilized community.” Id. This court must take the factual allegations as true and draw all reasonable inferences therefrom. Fairneny v. Savogran Co., 422 Mass. 469, 470 (1996). A careful analysis of the complaint indicates that the allegations fail to meet the threshold of outrage envisioned by this burden. Most of the allegations relate to Clemmer’s employment and are thus covered by the Workers’ Compensation Act. The allegations related to actions taken by the Defendants against Clemmer qua shareholder, simply include conclusoiy statements (1) that the Defendants “acted in concert to wrongfully freeze [Clemmer] out of LiveData” (Complaint ¶26), and (2) that his inquiries and attendance at shareholder meetings was “discouraged.” (Complaint ¶24.) There are no factual allegations that specifically state, or even lead to reasonable inferences, that the Defendants, either individually or in concert, had the intention of depriving Clemmer of his shareholder rights and took “extreme and outrageous” measures to effectuate that intention. As a result, and as was the case in Kurker, this court finds that Clemmer “has not alleged facts and circumstances . . . that could be characterized as extreme and outrageous.” Id. at 193-94. Therefore, Counts Ed and IV must be dismissed pursuant to Mass.R.Civ.P. 12(b)(6).

IV. ORDER

For the foregoing reasons, it is hereby ORDERED that the Defendants’ Motion to Dismiss is ALLOWED.

 The parties have identified LiveData only as a “closely held Delaware corporation,” not that it was organized under the specially designated Delaware close corporation law, 8 Del. C. §341 et seq. As the motion to dismiss is limited to the pleadings, which are silent on the exact corporate status of LiveData, this court infers that LiveData is not organized under the specially designated Delaware close corporation law. Mass.R.Civ.P. 12(c).