Billings, Thomas P., J.
For the reasons that follow, the defendants’ cross motion for summary judgment is ALLOWED, and plaintiffs motion for partial summary judgment on Counts I, II and IX is DENIED.
BACKGROUND
The summary judgment record reveals the following facts, which either are undisputed or are here taken in the light most favorable to the plaintiff. Plaintiff Formato is an engineer and an inventor. Defendant Protonex is a small technology company founded by Formato, defendant Paul Osenar, and Mohammed Enayetullah, who had worked together at Foster-Miller (an engineering firm in Waltham), and by Attila Herczeg, an outsider recruited by the other three to be the company’s first President and CEO. Protonex was incorporated on October 6, 2000 under the laws of Delaware; somewhat after this, Attila Herczeg joined as Protonex’s first President and CEO. The company, whose principal office is located in Southborough, Massachusetts, manufactures and markets low-cost fuel cell technology.
By May of 2000, Osenar and Enayetullah had left Foster-Miller to begin working full-time on what would become Protonex. Neither was employed outside the company, except that Enayetullah consulted briefly for Northeastern University in late 2000. Formato, on the other hand, remained employed full-time at Foster-Miller and subsequently at Gentex Optics, Inc., while working part-time as a consultant for Protonex. None of the four founders received any cash compensation during this period.
In May of2001, the company did a round of friends- and-family financing. This triggered the execution of what Protonex refers to as a “founders’ suite” of contract documents. On May 14, Formato executed his. Insofar as is pertinent here, the documents consisted of the following.
Under a Consultant Agreement, Formato was to “perform such duties and assignments relating to the business of the Company, as the Chief Executive Officer of the Company shall direct,” for which he would be paid “at such rate as the Chief Executive Officer may determine in writing.” Formato’s anticipated duties and rate of pay are not further specified in the agreement. The Consultant Agreement contained a choice of law provision which stated that the agreement “shall be governed and construed in accordance with the laws of the State of Delaware.” (So far as appears in the record, all of the “founder’s suite” documents specify Delaware law, whereas all later agreements between Formato and Protonex specify Massachusetts law.)
Under a Stock Restriction Ageement Formate received 482,000 shares of Protonex stock, priced at a penny per share. Twenty percent of these shares vested upon purchase and an additional five percent vested every three months.
A Non-Competition and Non-Solicitation Agreement and an Invention and Non-Disclosure Agreement contained the sorts of terms one customarily finds in such agreements.
It appears that with the first round of financing, the three founders who were working full-time for Pro-tonex began to receive cash compensation. Formato, who continued as a part-time consultant, was paid hourly for his work on one specific project (the “OBD SBJR”). He did additional work for Protonex for which he was not paid. Formato had no authorization, written or oral, from any of three successive Protonex CEOs to be paid for this additional work, nor did he communicate about it with any CEO, director, or investor. The company’s position is that Formate’s work and status as a consultant allowed his stock to vest during this period, and that this was compensation enough.
In November 2001, Formato asked Osenar (then Protonex’s Chief Technology Officer) about submitting invoices for his additional work under the consulting agreement. Osenar told him not to submit invoices and that if he did, they would not be paid. He gave as reasons the facts that the company did not have the money and that Formato, unlike the others, had a full-time outside job. Osenar did not say so, but Formato believed that although he would not be paid “at that time,” he later “would be reimbursed under the consulting agreement whether it was in cash, in stock, or in some way that he and the company deemed appropriate.”
In the fall of 2003, Formate left his job at Gentex to become Protonex’s Director of Engineering. The parties entered into an Executive Agreement dated October 30,2003, which included a choice-of-law provision specifying Massachusetts law. By its terms, the Executive Agreement was to expire on December 31, 2004, but automatically renewed each year unless the company gave notice of non-renewal sixty days prior to year’s end. There was also a severance clause, under which “(i]f the Executive’s employment with the Company is terminated ... by the Company without cause . . . the Executive shall be entitled to . .. continuation *118 of Executive’s Base Salary ... for six (6) months following the date of such termination.” Formato began working full-time for Protonex on November 17, 2003.
On October 27, 2004, Protonex gave its entire management team, including Formato, written notice that their employment contracts would not be renewed as of December 31, 2004. On November 15, 2004, Osenar and Scott Pearson (“Pearson”), Protonex’s CEO, met with Formato and further informed him that he would no longer be employed by Protonex once the executive agreement expired; i.e., that Protonex would not be tendering him a new contract. Pearson asked Formato to turn in his keys and remove his belongings from his office, and gave him the new “assignment” of looking for new employment, off the premises.
From this point forward Formato no longer had access to his office, email, or voice mail; he was, however, paid his full salary until December 31, 2004. According to Pearson, Formato was asked not to return after November 15, 2004 because in his judgment it would have been disruptive for Formato to continue working on-site for the final six weeks of his contract.
Formato filed this action on January 7, 2005. The Complaint is in nine counts, as follows:
I. Breach of Contract (alleging that Protonex breached the Consultant Agreement by failing to pay Formato);
II. Specific Performance (alleging that Protonex owes Formato severance under the Executive Agreement);
III. Fraud in the Inducement (alleging that Osenar, acting for Protonex, falsely promised performance of the Consultant Agreement);
IV. Rescission (of the Invention and Non-Disclosure Agreement on account of breaches by Protonex of the Consultant Agreement and the Executive Agreement);
V. Breach of Covenant of Good Faith and Fair Dealing (concerning Protonex’s alleged breaches of the Consultant and Executive Agreements);
VI. Quantum Meruit (alleging that Protonex failed to compensate Formato for work done under the Consultant and Executive Agreements);
VII. Unjust Enrichment (similar to VI);
VIII. Breach of Fiduciary Duty (against Osenar); and
IX. Declaratory Judgment (against Protonex; seeking relief from Executive Agreement and Non-Competition and Non-Solicitation Agreement on account of breaches of the Consultant and Executive Agreements).
The defendants now seek summary judgment as to all counts. Formato has cross moved for partial summary judgment as to Counts I, II and IX.
DISCUSSION
I. Summary Judgment.
Summary judgment is appropriate where there is no genuine issue as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P.56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating both the absence of a triable issue and its entitlement to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment may satisfy this burden by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of their case. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 710 (1991).
II. Claims Pertaining to the Consultant Agreement
Counts I, III, IV (in part), V (in part), VI (in part), and VII (in part) ofFormato’s complaint concern, in various respects, the Consultant Agreement. All but Count III (addressed separately below) are contractual in nature, and all are barred by the statute of limitations.
The Consultant Agreement, as noted above, specified that it was to be “governed and construed in accordance with the laws of the State of Delaware.” The choice of law provision presents two questions. First, the court must decide whether to apply the statute of limitations of Massachusetts or Delaware. If Delaware’s three-year statute of limitations applies, then Formato’s claims based on the consulting agreement are barred. If Massachusetts’ six-year statute of limitations applies, however, his claims are not barred. Additionally, if Massachusetts’ statute of limitations applies, the court must determine whether to apply Massachusetts or Delaware law to the substantive issues.
Until 1995, Massachusetts had historically interpreted statutes of limitations as “procedural,” a con-clusoiy term meaning that the law of the forum was automatically applied. New England Tel. Co. v. Gourdeau Constr. Co., 419 Mass. 658, 659 (1995). In 1995, however, the Supreme Judicial Court adopted a “functional approach” and stated that “(o]ur focus should be on which State has the most significant relationship to the occurrence and to the parties with respect to the issue of limitations.” Id. at 661. The court made clear that in the future, when analyzing this conflict of law issue, Massachusetts courts must look to the provisions of the Restatement (Second) of Conflict of Laws §142 (Sup. 1988). That Restatement provision provides that:
In general, unless exceptional circumstances of the case makes such a result unreasonable:
*119 (1) The forum will apply its own statute of limitations barring the claim.
(2) The forum will apply its own statute of limitations permitting the claim unless:
(a) maintenance of the claim would serve no substantial interest of the forum; and
(b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.
If the parties’ choice-of-law provision were ignored in favor of the purely “functional” approach, the Massachusetts six-year statute of limitations plainly would apply to Formato’s contract-based claims. They concern a contract that was executed, and (allegedly) performed on one side and breached on the other, in Massachusetts. Although Protonex is a Delaware corporation, no issues of corporate governance are involved. Contrast Harrison v. NetCentric Corp., 433 Mass. 465 (2001).
The Gourdeau case, however, did not involve a contractual choice of law provision such as that in the present case. In the only Massachusetts appellate case cited by either side addressing the application of a choice-of-law clause to statutes of limitation, the Appeals Court upheld the trial court’s decision to apply New Hampshire’s statute of limitations rather than that of Massachusetts. Newburyport Five Cent Savings Bank v. MacDonald, 48 Mass.App.Ct. 904 (1999). In doing so, the Appeals Court affirmed the trial court’s application of §187 of the Restatement (Second) of Conflict of Laws (Sup. 1988) rather than §142. Under §187, Massachusetts courts have held that “(w)here the parties have expressed a specific intent as to the governing law, Massachusetts courts will uphold the parties’ choice as long as the result is not contrary to public policy and as long as the designated state has some substantial relation to the contract.” Steranko v. Inforex, Inc., 5 Mass.App.Ct. 253, 260 (1977) (citations omitted).
In the present case, application of Delaware’s statute of limitations is not contrary to Massachusetts public policy. Additionally, as previously stated, Pro-tonex is incorporated under the laws of Delaware and thus has “some substantial relation to the contract.” id.[1] Consequently, it is appropriate to apply Delaware’s three-year statute of limitations to Formato’s claims of breach of contract (count I), rescission (count IV), breach of implied covenant of good faith and fair dealing (count V), quantum meruit (count VI), unjust enrichment (count VII), breach of fiduciary duty (count VIII), and declaratory judgment (count IX). See Del. Code Ann. tit. 10, §8106 (“No action based on a promise . . . shall be brought after the expiration of 3 years from the accruing of the cause of such action”); Medtronic Vascular, Inc. v. Advanced Cardiovascular, 2005 U.S. Dist. LEXIS 1158, *13 (D.Del. Jan 5, 2005); Alban Tractor Co. v. Land Preparation Specialists, 2001 Del.Super. LEXIS 303, *4 (Del.Super.Ct. July 30, 2001).
Under Delaware law, moreover, the statute of limitations begins to run “at the time of the alleged wrongful act ‘even if the plaintiff is ignorant of the cause of action.’ ” Medtronic Vascular, Inc, 2005 U.S. Dist. LEXIS at *13 (citations omitted). Exceptions exist for “inherently unknowable” injuries and for those which are fraudulently concealed by a defendant. Id. at *14. These exceptions, however, are not applicable in view of Formato’s admission that Osenar informed him in November 2001 that he would not be paid under the consulting agreement if he were to submit invoices requesting payment. Formato’s assumption at that point that Protonex would take care of him, somehow, some day, was not based on any promise or representation by either defendant, and was not even related, as Formato described it, to the terms of the Consultant Agreement. Since Formato did not file his complaint until January 2005, all claims based on the consulting agreement are barred under the statute of limitations.
Count III alleges that Osenar (acting for Protonex) fraudulently induced Formato to sign the Consultant Agreement by “assur(ing) Mr. Formato of the commitment of Protonex to honor its obligations” thereunder. Whether or not a claim of fraud in the inducement would fall under the contractual choice of law clause need not be decided here, because the applicable period of limitations in both Massachusetts and Delaware is three years. Nor do the rules governing accrual differ materially, when applied to these facts, as between the two jurisdictions. Compare G.L.c. 260, §2A and Protective Life Ins. Co. v. Sullivan, 425 Mass. 615, 631-32 (1997) (“The discovery rule operates to toll a limitations period only where a misrepresentation concerns a fact that was ‘inherently unknowable’ to the aggrieved, or where a wrongdoer concealed the existence of a cause of action though some affirmative act done with the intent to deceive, or breached some duty of disclosure”; citations omitted), with 10 Del. C. §8106 and State ex re. Brad v. Pettinaro Enterprises, 870 A.2d 513, 531 (Del.Ch. 2005) (in fraud cases and other cases, limitations period begins to run “at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action”; exceptions “when an injury is inherently unknowable to the plaintiff, or when a wrongful act is fraudulently concealed by the wrongdoer”; citations and footnote omitted).
Assuming that the factual record would otherwise support the claim asserted as Count III, that claim expired three years after the November 2001 conversation when Osenar instructed Formato not to submit invoices for his consulting work because Protonex would not pay them. Count III is thus time-barred under either Massachusetts or Delaware law.
III. Claims Relating to the Executive Agreement.
Count II of Formato’s complaint seeks specific performance of the severance clause in his executive *120 agreement with Protonex. Additionally, Counts IV, V, VI, and VII are each addressed in part to obligations which Formato maintains are owed him under the Executive Agreement. Because the Executive Agreement (unlike the Consultant Agreement) provides that Massachusetts law will apply, and because the conduct by which Formato is aggrieved took place in 2004, these claims are not time-barred.
As noted above, the Executive Agreement provided severance benefits that would be triggered if Formato’s “employment with the Company [were] terminated ... by the Company without cause.” Formato asserts that he was actually or constructively discharged prior to December 31, 2004, and that he is therefore owed six months salary under the severance clause. Protonex maintains that Formato was not terminated, but that the Executive Agreement was simply allowed to expire on December 31, 2004.
Formato’s claim that he was actually terminated must fail. Courts have interpreted the phrase “termination of employment” as “a complete severance of relationship of employer and employee.” La Fata v. Raytheon Co., 302 F.Sup.2d 398, 409 (D.Pa. 2004); Shipner v. Eastern Air Lines, Inc., 868 F.2d 401, 405 (11th Cir. 1989); see also Black’s Law Dictionary 1482 (7th ed. 1999) (defining termination of employment as the complete severance of an employer-employee relationship). In the present case, Protonex continued to pay Formato’s salary until the expiration of his executive agreement. Formato also continued to receive his benefits until that time. Although he no longer was permitted to perform his duties with the company, the employer-employee relationship was not completely severed.
Formato also claims that by taking away his employment duties and asking him not to come into work anymore, Protonex constructively terminated him. Constructive discharge occurs when
the employer’s conduct effectively forces an employee to resign. Although the employee may say, “I quit,” the employment relationship is actually severed involuntarily by the employer’s acts, against the employee’s will. As a result, a constructive discharge is legally regarded as a firing rather than a resignation.
GTE Prods. Corp v. Stewart, 421 Mass. 22, 33-34 (1995).
The Appeals Court has discerned two lines of cases concerning constructive discharge — "one that focuses on demotions and other loss of authority or status in executive and managerial positions and another that focuses on claims of intolerable working conditions." Rubin v. Household Commercial Financial Serv., 51 Mass.App.Ct. 432, 441 (2001). Cases such as Kravetz v. Merchants Distributors, Inc., 387 Mass 457 (1982), and Miller v. Winshall 9 Mass.App.Ct. 312 (1980), are examples of the former and express the appropriate standard in this type of case. Under this line of reasoning, courts have found constructive discharge where an employer effectively gave an employee’s job to someone else, transferred the employee’s responsibilities thereby leaving him without any authority, or reassigned the employee to a nonexistent job. Rubin, 51 Mass.App.Ct. at 446.
Formato was undoubtedly subjected to a “material change in duties from those called for by the contract.” Kravetz, 387 Mass. at 462. His constructive termination claim, however, faces two problems. First, although Protonex requested that he not come to work for six weeks remaining on his contract, it continued to pay him his salary and all of his benefits remained intact. Formato was not fired and he did not resign. It therefore cannot be said that he was terminated, constructively or otherwise.
The second problem confronting Formato’s constructive discharge argument is suggested by Calhoun v. Acme Cleveland Corp., 798 F.2d 559 (1st Cir. 1986). In that case, the First Circuit noted that the purpose of the constructive discharge doctrine is to protect employees from an employer’s “calculated effort to pressure him [or her] into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his [or her] coworkers.” 798 F.2d at 561, quoting Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985); see also Rubin, 51 Mass.App.Ct. at 447. This is a far ciy from saying that the company should be required to pay an employee an additional six months of severance pay, as the price of giving him a six-week paid furlough.
Nor does the Executive Agreement itself contain any suggestion that such a result was intended. It expressly provides that it may be allowed to lapse at the end of any year, provided the employee is given sixty days’ notice. It also gives the company a second option: It may, at any time, discharge the employee without cause and pay him six months’ severance. Formato had already received timely notice, however, that his contract would not be renewed past the end of the year — had received, in other words, the protection granted by the contract to an employee nearing the end of the contract term. What he additionally received on November 15, 2004 was a release from his duties to Protonex so that he could look for a new job, while continuing to receive his salary and benefits. This was not a termination in the sense required to trigger the severance benefit.
Protonex therefore did not breach the Executive Agreement, meaning that summary judgment will enter in its favor on Count II. Summary judgment will also enter for the defendants:
On the balance of Count IV, because Protonex did not breach the Executive Agreement;
On the balance of Count V, because Protonex’s actions had neither the intention nor the effect of depriving Formato of compensation already earned; i.e., compensation “clearly related to [his] past ser *121 vice,” Gram v. Liberty Mat. Ins. Co., 384 Mass. 659, 672 (1981); Fortune v. National Cash Register Co., 373 Mass. 96 (1977);
On the balance of Counts VI and VII, because “(i]t is well settled that quantum meruit relief may not be granted where an express contract covering the matter exists,” York v. Zurich Scudder Investments, Inc., 66 Mass.App.Ct. 610, 620 (2006); and
On the balance of Count IX, because Protonex did not breach the Executive Agreement.
IV. Count VIII (Against Osenar, for Breach of Fiduciary Duty)
Count VIII, alleging that Osenar’s conduct toward Formato amounted to a breach of his fiduciary duty “to Protonex and its shareholders ... to act in good faith and in the best interests of Protonex,” fails largely for reasons already discussed,[2] and one more: such a claim would lie in favor of the corporation. It could only be brought by Formato, if at all,[3] as a derivative action in compliance with the requirements of Mass.R.Civ.P. 23.1. See, e.g., Bessette v. Bessette, 385 Mass. 806, 808-10 (1982).[4]
ORDER
For the foregoing reasons, the defendants’ motion for summary judgment is ALLOWED, and the plaintiffs motion for partial summary judgment is DENIED. Judgment to enter, dismissing the Complaint.

 According to Restatement (Second) of Conflict of Laws, § 187: “When the state of the chosen law has some substantial relationship to the parties or the contract, the parties will be held to have had a reasonable basis for their choice. This will be the case, for example, when this state is that where . . . one of the parties is domiciled.” Furthermore, “[gleneral principles are well established to the effect that... the domicil of a corporation is in the State where it is incorporated.” National Leather Co. v. Massachusetts, 277 U.S. 413, 415 (1926); see also Restatement (Second) of Conflict of Laws, §11, comment 1 (1971).

Any claim arising out of Osenar’s statements in connection with Formato’s execution of the "executive suite,” or his subsequent refusal to accept Formato’s invoices for consulting services, would be time-barred. See Doe v. Harbor Schools, Inc., 446 Mass. 245, 254-55 (2006) (claim for breach of fiduciary duty is governed by three-year statute of limitations in G.L.c. 260, §2A, which begins to run when “the beneficiary is aware that repudiation has occurred”; citation omitted). Osenar’s participation in the company’s non-renewal of the Executive Agreement and the reassignment of Formato to an off-premises job search breached no contract and no fiduciary duty. Formato has not alleged that Protonex was the sort of closely held corporation in which the shareholders’ return on investment comes principally in the form of employment by the company, see Donahue v. Rodd Electrotype of New England, Inc., 367 Mass. 578 (1975), or that the non-renewal or reassignment constituted a “freeze-out” that deprived him of the reasonably expected fruits of his investment.

Among other issues to be addressed in a derivative action would be Formato’s conflict of interest, as the purported representative of the corporation’s interests in claims involving its treatment of himself.

It bears noting also that Formato would not, on these facts, have a claim against Osenar for breach of a fiduciary duty owed to Formato. “(T]he law of the State of incorporation governs claims concerning the internal affairs of a corporation, including the treatment of alleged breaches of fiduciary duty.” Harrison, 433 Mass. at 472. Under Delaware law, “although majority stockholders have fiduciary duties to minority stockholders qua stockholders, those duties are not implicated when the issue involves the rights of the minority stockholder qua employee under an employment contract.” Riblet Prods. Corp. v. Nagy, 683 A.2d 37, 37 (Del. 1996).