GEORGE K. KURKER vs. EDWIN J. HILL & others.[1]

No. 96-P-409.

Barnstable. June 10, 1997. - January 22, 1998.

Present: WARNER, C.J., SMITH, & JACOBS, JJ.

*Practice, Civil,* Dismissal. *Fiduciary. Corporation,* Close corporation, Stockholder. *Attorney at Law,* Attorney-client relationship. *Conspiracy. Actionable Tort. Consumer Protection Act,* Availability of remedy. *Emotional Distress.*

This court declined to extend the fiduciary duty owed among shareholders of a closely held corporation to the shareholders' individual attorneys, and a Superior Court judge correctly dismissed a claim for breach of fiduciary duty brought by a shareholder in a closely held corporation against the attorneys representing other shareholders. [187-188]

Discussion of the elements of the two theories of civil conspiracy. [188-189]

In a civil action, the judge incorrectly dismissed, for failure to state a claim, the plaintiff's claim for civil conspiracy, where the plaintiff had alleged that the defendant attorneys had provided substantial assistance to the breach of fiduciary duty of majority shareholders in a closely held corporation; under the "concerted action" theory of civil conspiracy, the plaintiff was not required to allege or prove coercion. [188, 189-190]

In a civil action, claims under G. L. c. 93A were properly dismissed, where the allegations of a freeze-out of a minority shareholder in a closely held corporation and an improper sale by the shareholders of corporate assets did not constitute "trade or commerce" within the meaning of G. L. c. 93A, § 11. [190-191]

The judge in a civil action correctly dismissed negligence claims brought against attorneys, where the defendants owed no duty to the plaintiff, whom they did not represent. [191]

In a civil action, the plaintiff stated a claim on which relief could be granted where he alleged that defendant attorneys had knowingly interfered, through improper means, with the plaintiff's business relationship and that the plaintiff had suffered a loss thereby [191-192]; further, no litigation privilege was applicable, in the circumstances [192].

In a civil action, where the plaintiff failed to allege facts and circumstances in

---

[1]Corrine M. Hill, Robert J. Suffredini, Donna H. Suffredini, Therma-Flow, Inc., Joan M. Kurker, individually and as executrix/administratrix of the estate of James K. Kurker, Stanley Cygelman, Daniel J. Finn, William L. Eaton, and Edward N. Perry.

support of his claim for intentional infliction of emotional distress, the judge correctly dismissed that claim. [193-194]

CIVIL ACTION commenced in the Superior Court Department on August 31, 1992.

The case was heard by *John M. Xifaras*, J., on motions to dismiss, and entry of a judgment of dismissal was ordered by *Gerald F. O'Neill, Jr.*, J.

*George K. Kurker*, pro se.

*Stephen J. Duggan* for William L. Eaton.

*Daniel J. Finn* for Stanley Cygelman & another.

*Daniel S. Tarlow* for Edward N. Perry.

SMITH, J. The plaintiff, George Kurker, filed a ten-count complaint in the Superior Court against numerous defendants, including four attorneys, alleging various causes of action, all arising out of the purchase of the assets of Everhot All-Copper, Inc. (Everhot), a manufacturer of water heaters, by Therma-Flow, Inc. (Therma-Flow), a competitor. Seven of the ten counts asserted claims against the attorneys.[2] The essence of the complaint against the attorneys is that the assets sale was at a grossly inadequate price and that the four attorneys, with the other defendants, colluded and conspired to deflate the fair market value of Everhot's assets, including its good will, and to bring about the sale of the assets of Everhot to Therma-Flow for far less than fair market value, thereby depriving the plaintiff of his equity and his livelihood.

The other defendants include the plaintiff's brother, James Kurker (James), his two sisters, Donna Suffredini and Corrine Hill (sisters), and the sisters' husbands, Robert Suffredini and Edwin Hill (husbands).

According to the complaint, the defendants William Eaton and Edward Perry represented James during the asset purchase, with Perry also defending James in a related preliminary injunction proceeding filed by Everhot in Superior Court. Defendants Stanley Cygelman and Daniel Finn represented the sisters, who were Everhot directors and shareholders, and also represented Therma-Flow and the husbands, who were Therma-Flow directors and shareholders.

[2]The attorneys are William L. Eaton, Edward N. Perry, Stanley Cygelman, and Daniel J. Finn.

All of the defendants, including the four attorneys, filed motions to dismiss the plaintiff's complaint pursuant to Mass.R. Civ.P. 12(b)(6), 365 Mass. 755 (1974). A Superior Court judge dismissed all the counts directed at the four attorneys including count two (breach of fiduciary duty), count three (civil conspiracy), count four (unfair and deceptive practices), count six (negligence), count seven (wrongful appropriation of business opportunities), count eight (interference with advantageous business relations), and count nine (intentional infliction of emotional distress). The plaintiff has appealed from the allowance of the attorneys' dismissal motions.

1. *Background.* Since 1981, Everhot's shareholders consisted of the plaintiff, his brother James, and his sisters. The sisters' husbands were involved in Everhot's management but were not shareholders. In 1986, a rift developed, the husbands resigned, and the plaintiff and James took over Everhot's management. Shortly after their departure, the husbands formed a competing hot water heater company, Therma-Flow. In 1988, the plaintiff and James obtained court approval to have the sisters removed from Everhot's board of directors. After the sisters' removal, Everhot's board of directors consisted of the plaintiff, James, and Everhot's new general manager, Richard Washak.

In 1989, the plaintiff and James began to disagree about Everhot's management; subsequently, James sent notices to Everhot's stockholders calling for two special stockholders' meetings. The purpose of the first meeting was to remove Washak from Everhot's board of directors and reinstate the sisters as members of the board of directors; the purpose of the second meeting was to obtain approval of an agreement to sell Everhot's assets to Therma-Flow. At the first meeting, Washak was removed from the board of directors, and the sisters were elected to the board. At the second meeting, over the plaintiff's objections, the majority of Everhot's shareholders approved the sale of Everhot's assets to Therma-Flow.

2. *Scope of review.* Under Mass.R.Civ.P. 12(b)(6), "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nader* v. *Citron,* 372 Mass. 96, 98 (1977), quoting from *Conley* v. *Gibson,* 355 U.S. 41, 45-46 (1957). Also, "the allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiff's favor, are to be taken as true." *Nader* v. *Citron, supra* at 98.

We now address each of the plaintiff's claims against the attorneys.

3. *Imputed breach of fiduciary duty (count two).* The plaintiff urges us to adopt a theory of recovery based on an imputed fiduciary duty that he contends should be owed by one shareholder's attorney to the other shareholders in a closely held corporation. Relying on the duty of utmost loyalty and good faith imposed among shareholders of a closely held corporation under *Donahue* v. *Rodd Electrotype Co. of New England,* 367 Mass. 578, 593 (1975), and the fiduciary duty that might arguably be owed by a corporation's counsel to its individual shareholders, as suggested in *Schaeffer* v. *Cohen, Rosenthal, Price, Mirkin, Jennings & Berg, P.C.,* 405 Mass. 506, 513 (1989), the plaintiff argues that the duty owed among shareholders of closely held corporations should be imputed to the shareholders' individual attorneys. However, the policy expressed in *Beecy* v. *Pucciarelli,* 387 Mass. 589, 597 (1982), and more recently in *Lamare* v. *Basbanes,* 418 Mass. 274, 276 (1994), dictates otherwise.

In *Lamare,* the court noted that it "will not impose a duty of reasonable care on an attorney if such an independent duty would potentially conflict with the duty the attorney owes to his or her client." *Ibid.* The court explained, "[t]he rule is founded on the realization that, if a duty was owed to the adversary of an attorney's client, an unacceptable conflict of interest would be created, and because it would be inimical to the adversary system for an adverse party to be allowed to rely on an opposing party's attorney." *Ibid.* Even if we assume that counsel to a closely held corporation owes a fiduciary duty to its individual shareholders, the plaintiff's complaint does not allege that any of the defendant attorneys acted as corporate counsel to Everhot. Nor does the plaintiff allege that he relied on the defendant attorneys as representing his interests. See, e.g., *Page* v. *Frazier,* 388 Mass. 55, 64 (1983). In these circumstances, the defendant attorneys owed a fiduciary duty to their individual clients only. Given the acrimonious relationship that had existed among Everhot's shareholders in the years leading up to the assets purchase, the plaintiff should have anticipated that the other shareholders' individual attorneys would not be representing his interests in the transaction.

Absent a sound basis in policy or a discernible trend in the decisional law, we decline to extend the fiduciary duty owed

among shareholders of a closely held corporation to their individual attorneys. Accordingly, count two of the plaintiff's complaint against the four attorneys was properly dismissed.

4. *Civil conspiracy (count three)*. In this count, the plaintiff alleged that all of the defendants conspired to accomplish an unlawful purpose, i.e., the sale of Everhot's assets to Therma-Flow at a grossly disproportionate price, by means of coercion. The Superior Court judge dismissed this count against the four attorneys but not the other defendants.

On appeal, the attorneys argue that the coercive element necessary to make out a claim for civil conspiracy lacks factual support in the complaint. We agree, but the absence of facts supporting the element of coercion is not fatal to the plaintiff's claim.[3]

Two kinds of civil conspiracy have been delineated in the decisions. See *Aetna Cas. Sur. Co.* v. *P & B Autobody*, 43 F.3d 1546, 1563-1564 (1st Cir. 1994). The element of coercion has been required only if there was no independent basis for imposing tort liability — where the wrong was in the particular combination of the defendants rather than in the tortious nature of the underlying conduct. See, e.g., *Neustadt* v. *Employers' Liab. Assur. Corp.*, 303 Mass. 321, 325 (1939). However, another form of civil conspiracy, reflected in the Restatement (Second) of Torts § 876 (1977), derives from "concerted action," whereby liability is imposed on one individual for the tort of another. *Aetna Cas. Sur. Co.* v. *P & B Autobody*, 43 F.3d at 1564. See *Gurney* v. *Tenney*, 197 Mass. 457, 466 (1908); *Kyte* v. *Philip Morris, Inc.*, 408 Mass. 162, 166 (1990).

Under the broad sweep of rule 12(b)(6), see *Nader* v. *Citron,*

---

[3]The defendants argue that a claim for civil conspiracy must be pleaded with particularity. This may be true where the complaint charges conspiracy to defraud, see *Hayduk* v. *Lanna*, 775 F.2d 441, 443-444 (1st Cir. 1985), but the defendants cite no authority applying the pleading standard of Mass.R.Civ.P. 9(b), 365 Mass. 751 (1974), to civil conspiracy claims generally. The defendants also contend that a claim for civil conspiracy could only be brought derivatively on behalf of Everhot. However, the harm caused by a freeze-out may manifest itself in personal harm to the minority shareholder, who has lost employment and benefits as well as equity. See *Donahue* v. *Rodd Electrotype Co. of New England, 367 Mass. at 588-589; Wilkes* v. *Springside Nursing Home, Inc.*, 370 Mass. 842, 848 (1976); *Schaeffer* v. *Cohen, Rosenthal, Price, Mirkin, Jennings & Berg, P.C.*, 405 Mass. at 513.

372 Mass. at 104,[4] this second kind of civil conspiracy, which does not require proof of coercion, may also be considered as a basis for relief under count three of the plaintiff's complaint.

Particularly germane to the plaintiff's allegations in his complaint is the Restatement (Second) of Torts § 876(b) (1977), which states that a person may be liable in tort if he "knows that the . . . conduct [of another person] constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." Though not explicitly adopted in Massachusetts, this section of the Restatement has been cited in appellate decisions and, in some instances, has provided the basis for recovery. See *Nelson* v. *Nason*, 343 Mass. 220, 222 (1961) (recovery allowed under concerted action theory of § 876[b] where the defendant's deliberate conduct caused another to engage in tortious activity). See also *Pathe Computer Control Sys. Corp.* v. *Kinmont Indus., Inc.*, 955 F.2d 94, 98 (1st Cir. 1992); *Payton* v. *Abbott Labs.*, 512 F. Supp. 1031, 1034-1035 (D. Mass. 1981); *Norman* v. *Brown, Todd & Heyburn*, 693 F. Supp. 1259, 1264 (D. Mass. 1988). Key to this cause of action is a defendant's substantial assistance, with the knowledge that such assistance is contributing to a common tortious plan. "In the tort field, the doctrine appears to be reserved for application to facts which manifest a common plan to commit a tortious act where the participants know of the plan and its purpose and take affirmative steps to encourage the achievement of the result." *Stock* v. *Fife*, 13 Mass. App. Ct. 75, 82 n.10 (1982) (despite a common plan among friends to drink alcohol while driving to and from a nightclub, no joint liability from the mere presence of the defendant in the car when the driver ran a red light and struck another vehicle). See *Kyte* v. *Philip Morris, Inc.*, 408 Mass. at 167-168 (no proof that the defendant cigarette manufacturer gave substantial assistance to a store's sale of cigarettes to minors or knew that the store's conduct constituted a breach of duty to minors purchasing cigarettes).

Analyzing this second prong of "concerted action" civil conspiracy, we note that the plaintiff's complaint states a claim that the defendant attorneys knowingly provided substantial assistance to the majority shareholders in plotting to secure

---

[4]In *Nader* v. *Citron, supra* at 104, the court stated that "[t]he outdated notion that the pleadings must proceed on a specific theory, and that recited facts will not be sufficient against a motion to dismiss if the theory is deemed inapplicable, is not the law of this Commonwealth."

James's vote and in orchestrating the assets purchase, while they were aware that the freeze-out and the undervalued sale of Everhot's assets to Therma-Flow constituted a breach of the majority shareholders' fiduciary duty to the plaintiff. Contrast *Kadar Corp.* v. *Milbury*, 549 F.2d 230, 233 (1st Cir. 1977) ("nowhere is there so much as a hint as to what, specifically, any of the ; . ; [defendants] are supposed to have done" in connection with the alleged conspiracy). Based on the foregoing, and accepting the allegations in the complaint as true, see *Logotheti* v. *Gordon*, 414 Mass. 308, 310 (1993), count three of the plaintiff's complaint should not have been dismissed as to the defendant attorneys.[5]

5. *Chapter 93A claim (count four).* The plaintiff's complaint alleges that the defendant attorneys' activities in facilitating the purchase of Everhot's assets by Therma-Flow constituted unfair and deceptive practices in violation of G. L. c. 93A, § 11. The judge, relying on *Bessette* v. *Bessette*, 385 Mass. 806 (1982), dismissed this claim, reasoning that it could only be brought derivatively. *Bessette*, however, did not involve allegations of a freeze-out, but rather challenged excessive salaries and distributions to a director, claims which were held to belong to the corporation. As we note, *infra*, allegations of a freeze-out have been recognized as constituting a personal cause of action.[6]

· The c. 93A count was nonetheless properly dismissed, albeit on a ground not addressed by the trial judge. The plaintiff's c. 93A claim against the four attorneys is based on the alleged assistance that the attorneys provided to the shareholders of Everhot — the alleged freeze-out and alleged improper assets sale to

---

[5]On appeal, Kurker also argues that his complaint makes out a claim against the four attorneys for aiding and abetting a violation of the shareholders' fiduciary duty owed to the plaintiff. See *Spinner* v. *Nutt*, 417 Mass. 549, 556 (1994) (the plaintiff beneficiaries were required to show that the defendant attorneys knew of the trustees' breach of fiduciary duty and actively participated in the breach). See also *Augat, Inc.* v. *Aegis, Inc.*, 409 Mass. 165, 172-173 (1991) (liability could be imposed on competitor of corporation for knowingly participating with corporation's key employee in violation of his duty of loyalty). Although the plaintiff did not appeal from the denial of his motion to amend his complaint to add a count for aiding and abetting, we agree that, under the broad pleading standard of rule 12(b)(6), see *Nader* v. *Citron*, 372 Mass. at 104, the allegations of the complaint pertaining to civil conspiracy state a claim for aiding and abetting breach of fiduciary duty as well.

[6]That the harm alleged is personal to the plaintiff does not rule out a claim under G. L. c. 93A, § 11, which applies to businesspersons as well as business entities.

Therma-Flow could only be accomplished by Everhot's shareholders. Based on the facts alleged in the plaintiff's complaint, the c. 93A claim against the attorneys was properly dismissed because the sisters' and James's act of freezing out the plaintiff was "principally a private grievance," *Zimmerman* v. *Bogoff*, 402 Mass. 650, 663 (1988), an "internal business dispute," *First Enterprises, Ltd.* v. *Cooper*, 425 Mass. 344, 348 (1997), which was outside the " 'conduct of any trade or commerce' within the meaning of G. L. c. 93A, § 11." *Zimmerman* v. *Bogoff, supra* at 663. See *First Enterprises, Ltd.* v. *Cooper, supra* at 347.

6. *Negligence (count six).* Because we have determined that the defendant attorneys owed no direct duty to the plaintiff, they cannot be found liable to him for negligence. See generally *Logotheti* v. *Gordon*, 414 Mass. at 311-312; *Spinner* v. *Nutt*, 417 Mass. 549, 552 (1994). Hence, the plaintiff's negligence claim was properly dismissed.

7. *Interference with business relations (count eight).*[7] In order to make out a claim for interference with advantageous business relations, the plaintiff must prove that (1) he had a business relationship for economic benefit with a third party, (2) the defendants knew of the relationship, (3) the defendants interfered with the relationship through improper motive or means, and (4) the plaintiff's loss of advantage resulted directly from the defendants' conduct. *Adcom Prods., Inc.* v. *Konica Bus. Machs. USA, Inc.*, 41 Mass. App. Ct. 101, 104 (1996). See *United Truck Leasing Corp.* v. *Geltman*, 406 Mass. 811, 816-817 (1990). The plaintiff's count for interference satisfies these requirements.

Some of the defendant attorneys argue, nevertheless, that the plaintiff's claim fails because he did not allege animus or ill-will on the part of the attorneys. The standard, however, is interference accompanied by improper motive *or* improper means; the plaintiff need not prove both. *Draghetti* v. *Chmielewski*, 416 Mass. 808, 816 n.11 (1994). For purposes of this cause of action, "improper means" may consist of a violation of a statute or common law precept. See *United Truck*

---

[7]The judge also dismissed the plaintiff's claim against the defendants for wrongful appropriation of business opportunity (count seven). The plaintiff does not address this issue in his brief; therefore, we deem this issue to be waived. See Mass.R.A.P. (16)(a)(4), as amended, 367 Mass. 921 (1975); *Tetrault* v. *Mahoney, Hawkes & Goldings*, 425 Mass. 456, 467 n.12 (1997).

*Leasing Corp.* v. *Geltman,* 406 Mass. at 817. The plaintiff has alleged that the assets purchase constituted a minority freeze-out, which has been recognized as a breach of fiduciary duty in Massachusetts. See *Donahue* v. *Rodd Electrotype Co. of New England.,* 367 Mass. at 588-594; *Wilkes* v. *Springside Nursing Home, Inc.,* 370 Mass. 842, 848-850 (1976). The plaintiff thus was not additionally required to allege that the defendants acted with improper motives.

The defendants further maintain that the litigation privilege shielded them from liability for the legal advice and services they rendered in connection with the Everhot assets purchase. It is true that an attorney's statements are privileged "where such statements are made by an attorney engaged in his function as an attorney whether in the institution or conduct of litigation or in conferences and other communications preliminary to litigation." *Sriberg* v. *Raymond,* 370 Mass. 105, 109 (1976). See generally *Robert L. Sullivan, D.D.S., P.C.* v. *Birmingham,* 11 Mass. App. Ct. 359, 361-362 (1981); *Doe* v. *Nutter, McClennen & Fish,* 41 Mass. App. Ct. 137, 140 (1996). The litigation privilege recognized in our cases, however, would not appear to encompass the defendant attorneys' conduct in counselling and assisting their clients in business matters generally.[8]

Taking the allegations in the plaintiff's complaint as true, the attorneys' honesty and good faith in rendering legal advice and assistance to their clients is challenged by the allegations that the attorneys represented individuals on both sides of the transaction and engaged in a conspiracy to undervalue the assets and freeze out the plaintiff.[9]

---

[8]Defendant Perry argues, in response to this and other claims, that his representation of James was limited to the preliminary injunction proceedings in a prior Superior Court action, and was therefore protected under the litigation privilege. Because the complaint implicated Perry in the larger scheme of the assets purchase and freeze-out, and did not confine his involvement solely to statements or communications made in connection with the preliminary injunction proceedings, the privilege would not warrant dismissal of the claims against Perry at this early stage of the proceedings.

[9]See, e.g., *Beatie* v. *DeLong,* 164 A.D.2d 104, 109-110 (N.Y. 1990) (defendant attorney's advice to client that the client's former counsel's contingency fee agreement was unenforceable was wrong, but did not provide a basis for the former attorney's interference action in the absence of bad faith, fraud, collusion, or malice). Compare *Schwanbeck* v. *Federal-Mogul Corp.,* 31 Mass. App. Ct. 390, 413 (1991), *S.C.,* 412 Mass. 703 (1992) (no proof of leverage, espionage, or misrepresentation employed in competition

· 8. *Intentional infliction of emotional distress (count nine).* In a count for intentional infliction of emotional distress, the plaintiff must allege not only "(1) that the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct, but also (2) that the defendant's conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community, (3) the actions of the defendant were the cause of the plaintiff's distress, and (4) the emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it." *Tetrault* v. *Mahoney, Hawkes & Goldings,* 425 Mass. 456, 466 (1997), quoting from *Payton* v. *Abbott Labs.,* 386 Mass. 540, 555 (1982). The plaintiff's complaint parrots the requisite elements of the claim but lacks factual support for his wholly conclusory allegations, despite the considerable factual detail in support of his other claims. See *Schinkel* v. *Maxi-Holding, Inc.,* 30 Mass. App. Ct. 41, 51 (1991) (a factually detailed complaint may reveal that an element is not sufficiently alleged and will not be established).

The complaint alleged that the defendant attorneys facilitated the loss of the plaintiff's interest in the family business, along with his salaried position and benefits, thereby causing him severe emotional distress. Along the same lines, in *Garrity* v. *Garrity,* 399 Mass. 367 (1987), a wife sued her husband for breach of fiduciary duty for diverting funds from their closely held corporation, and sundry other bad acts. The facts she pleaded to support her claim for intentional infliction of emotional distress were held not to constitute extreme and outrageous conduct. *Id.* at 369-370. See *Beecy* v. *Pucciarelli,* 387 Mass. at 596 (defendant attorney's conduct in knowingly filing a lawsuit against the wrong Filene's customers could not be characterized as extreme and outrageous); *Tetrault* v. *Mahoney, Hawkes & Goldings,* 425 Mass. at 466-467 (law firm's drafting of will without meeting with testator or otherwise ascertaining his intent did not constitute extreme and outrageous conduct). We think the plaintiff has not alleged facts and circumstances, in relation to the defendant attorneys, that could be character-

---

between businesses with no prior relationship that were vying to purchase the assets of a third party).

ized as extreme and outrageous.[10] See *Boyle* v. *Wenk*, 378 Mass. 592, 597 (1979) ("[t]here is an issue for the jury if reasonable people could differ on whether the conduct is 'extreme and outrageous' "). Accordingly, this count was properly dismissed.

9. *Conclusion.* Based on the foregoing, we affirm the dismissal, as to the defendant attorneys, of count two for breach of fiduciary duty, count four for violation of G. L. c. 93A, § 11, count six for negligence, count seven for wrongful appropriation of business opportunities, and count nine for intentional infliction of emotional distress. We reverse the dismissal, as to the defendant attorneys, of count three for civil conspiracy and count eight for interference with business relations. The case is remanded to the Superior Court for further proceedings.[11]

*So ordered.*

---

[10]The Superior Court judge dismissed count nine as to all defendants. Because the plaintiff appeals only from the dismissal with respect to the defendant attorneys, we limit our review to their conduct.

[11]The plaintiff also appeals from a November 7, 1995, denial of his motion to vacate the judgment and the entry of judgment for the defendant Eaton. Judgment was entered pursuant to Mass.R.Civ.P. 33(a), as amended, 368 Mass. 907 (1976), for the failure of the plaintiff to answer interrogatories propounded by Eaton. In his brief, Eaton takes notice of the issue but does not discuss it, "for the purposes of this appeal."

Based on the record, and the confusing docket, we hold that the matter under Mass.R.Civ.P. 60(b), 365 Mass. 828 (1974), should be reargued in the trial court.