**The ESTATE OF Edward Brian HALLORAN, Plaintiff,**

v.

**UNITED STATES of America et al., Defendants.**

**No. CIV.A.01–11346–RCL.**

United States District Court, D. Massachusetts.

June 26, 2003.

Albert F. Cullen, Jr., North Andover, MA, Steven M. Gordon, William E. Christie, Shaheen & Gordon, P.A., Concord, NH, for Plaintiff.

Margaret Krawiec, Peter Schlossman, U.S. Department of Justice Torts Branch, Civil Division, Washington, DC, E. P. Mullane, Mullane, Michel & McInnes, Cambridge, MA, Edward J. Lonergan, Boston, MA, Douglas I. Louison, James W. Simpson, Jr., Stephen C. Pfaff, Merrick, Louison & Costello, Boston, MA, Thomas C. Tretter, Healey, Deshaies & Gagliardi, PC, Amesbury, MA, William A. Brown, Alan D. Rose, Alan D. Rose, Jr., Rose & Associates, Christine M. Roach, Roach & Carpenter, P.C., Boston, MA, Brian P. Fitzsimmons, Hanley, Hassett & Fitzsimmons, LLC, Milton, MA, for Defendants.

John Morris, Pro se.

*MEMORANDUM AND ORDER ON DEFENDANT JAMES A. RING'S MOTION TO DISMISS*

LINDSAY, District Judge.

## I. Introduction

This action arises out of the circumstances surrounding the shooting death of Edward Brian Halloran ("Halloran") on May 11, 1982, allegedly at the behest of reputed Boston organized crime leaders Steven Flemmi ("Flemmi") and James "Whitey" Bulger ("Bulger"). The plaintiff in this case is Halloran's estate (the "Estate"), represented by Patricia Marie Halloran Maccarelli, its administratrix. The Estate has named, among others, the United States of America (the "United States") as a defendant pursuant to the Federal Tort Claims Act (28 U.S.C. § 2671 et seq.) (the "FTCA") and the Massachusetts wrongful death statute (Mass.Gen.L. c. 29), because the United States is alleged to be responsible for certain actions and/or omissions of agents of the Boston office of the Federal Bureau of Investigation (the "FBI") in their dealings with Bulger and Flemmi. James A. Ring ("Ring") is named as a defendant in this action because he was an agent of the FBI, serving as the supervisory Special Agent of the Organized Crime Squad for the Boston Office of the FBI beginning early in 1983 and continuing to 1990. Compl. ¶ 14. Several other defendants named in this action—H. Paul Rico, John Morris, John J. Connolly, Roderick Kennedy, Robert Fitzpatrick, James Greenleaf and James Ahearn (collectively, the "FBI Defendants")—also served as agents in various capacities in the Boston FBI office. *Id.* ¶¶ 9–13, 15–16. Also named as defendants are Flemmi, Bulger, and one of their alleged criminal associates, Kevin Weeks. *Id.* 17–18. The complaint asserts ten counts against Ring, each of which he has moved to dismiss, pursuant to Fed.

R.Civ.P. 12(b)(6), for failure to state a claim.

## II. Claims Asserted Against Defendant Ring.

The claims asserted against Ring are as follows: (i) Ring participated in a civil conspiracy with the United States and the FBI Defendants to preserve Flemmi and Bulger as upper-echelon law enforcement informants, and that certain tortious and/or wrongful acts by the participants in this conspiracy resulted in Halloran's wrongful death, from which a claim arises under Mass. Gen. L. c. 229, § 2 (count I of the complaint); (ii) Ring, the United States, and the FBI Defendants, through their negligent conduct, caused Halloran to experience conscious suffering actionable under Mass. Gen. L. c. 229 § 6 (count II of the complaint); (iii) Ring, the United States and the FBI Defendants each committed negligent acts in connection with the FBI's relationship with Bulger and Flemmi, which negligent acts resulted in Halloran's death and are actionable under Mass. Gen. L. c. 229 § 2 (count III of the complaint); (iv) the negligent acts of each of Ring, the United States and the FBI Defendants occasioned Halloran's conscious suffering and are actionable under Mass. Gen. L. c. 229 § 6 (count IV of the complaint); (v) Ring and the FBI Defendants knowingly, intentionally and with actual malice denied Halloran his substantive due process right not to be deprived of life and liberty without due process of the law, constituting a *Bivens* claim of violation of the Fifth Amendment to the United States Constitution (count X of the complaint); (vi) Ring failed adequately to supervise the FBI agents responsible for maintaining the FBI's relationship with Bulger and Flemmi, giving rise to a *Bivens* claim for violation of Halloran's Fourth and Fifth Amendment rights a count also designated "count X" in the complaint, and referred to

below as "count XA"; (vii) Ring and the FBI Defendants participated in a *Bivens* conspiracy to preserve Bulger and Flemmi as FBI informants, allowing actions to occur that deprived Halloran of his Fourth and Fifth Amendment rights ( count XI of the complaint); and (viii) Ring and the FBI Defendants participated in a *Bivens* conspiracy to preserve Bulger and Flemmi as FBI informants, committing and permitting acts that had the effect of depriving the Estate of its constitutional rights under the Fourth and Fifth Amendments to access the courts (count XII of the complaint). The complaint also contains a prayer for reasonable attorneys' fees and costs in the form of a final count (count XIII) asserted against the United States, Ring, and the FBI Defendants.

With respect to counts I, II, III, IV, X, XA and XI, Ring's theory is essentially that he cannot be held liable for any of the circumstances surrounding Halloran's death because he had not yet joined the FBI unit implicated in the Bulger/Flemmi saga. Ring's motion to dismiss also contends that count XII must be dismissed because the Estate has not made a claim of deprivation of the right to access the courts sufficient to survive a motion to dismiss under recent Supreme Court jurisprudence, and that count XIII does not state a separately cognizable cause of action. For the reasons stated below, Ring's motion to dismiss is GRANTED.

### III. Analysis

#### A. *Counts III. IV. X and XA.*

In its Opposition to Defendant James A. Ring's Motion to Dismiss ("Pl.Opp."), the Estate apparently concedes that no set of facts consistent with the complaint could be shown that would render Ring liable under counts III and IV (both premised on alleged negligence) or counts X and XA (both *Bivens* claims based on alleged duties owed to Halloran). For the reasons

explained in more detail below, and because the plaintiff does not oppose the dismissal of these counts, I GRANT Halloran's motion to dismiss each of counts III, IV, X and XA.

#### B. *Counts I and II.*

■ Counts I and II are based on the same Massachusetts statute providing remedies for wrongful death as counts III and IV, respectively. As in any negligence action, to state a claim for negligent causation of wrongful death, a plaintiff proceeding under this statute must show that the defendant owed a duty of care to the plaintiff, which duty the defendant breached, and that the breach was a proximate cause of the plaintiff's injury (i.e., the decedent's death). *See, e.g., Sentinel Products Corp. v. Platt,* 2002 WL 1613713, at *2 (D.Mass. July 22, 2002) (citing *Glidden v. Maglio,* 430 Mass. 694, 722 N.E.2d 971, 973 (2000)). Ring, who argues that counts I and II should be disposed of collectively with counts III and IV, contends that the Estate can plead no set of facts that would show that he owed Halloran any duty to protect; nor can the Estate show that any action by Ring was a cause in fact of Halloran's death, because Ring was employed by the FBI in Worcester and had no involvement with the FBI Defendants and/or Bulger and Flemmi as informants until several months after Halloran was killed. *See* James A. Ring's Memorandum in Support of His Motion to Dismiss ("Ring Mem.") at 7–8. The Estate's rejoinder to this argument is that counts I and II charge Ring with participation in a civil conspiracy, and that he can, as a matter of law, be held liable for acts of co-conspirators committed before he joined the conspiracy. Pl. Opp. at 7–8.

Civil conspiracy has been recognized by Massachusetts courts as a valid cause of action under two separate theories: the

first, sometimes called "true conspiracy," requires an allegation that "defendants, acting in unison, had some peculiar power of coercion over plaintiff that they would not have had if they had been acting independently." *Aetna Cas. Sur. Co. v. P & B Autobody,* 43 F.3d 1546, 1564 (1st Cir. 1994) (quoting *Jurgens v. Abraham,* 616 F.Supp. 1381, 1386 (D.Mass.1985)) (internal quotation marks omitted). It has been noted that actions of this type are rare, applying most frequently to "combinations of employers or employees working together in 'concerted refusals to deal.'" *Grant v. John Hancock Mut. Life Ins. Co.,* 183 F.Supp.2d 344, 363 (D.Mass.2002) (quoting *Mass. Laborers' Health & Welfare Fund v. Philip Morris,* 62 F.Supp.2d 236, 244 (D.Mass.1999)). The Estate relies on the second, "concerted action" theory, in which "liability is imposed on one individual for the tort of another." *Kurker v. Hill.* 44 Mass.App.Ct. 184, 689 N.E.2d 833, 836 (1998) (citing cases). This theory is further expounded in the RESTATEMENT (SECOND) OF TORTS § 876 (1977). Specifically, § 876(b) provides:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> .        .        .        .        .
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.

The Estate proceeds on this basis, citing such cases as *Kurker* for the validity of its theory. The Massachusetts Appeals Court in *Kurker,* however, was careful to note that this section of the RESTATEMENT has not been explicitly adopted in Massachusetts, though other appellate and trial courts have relied on it in various circumstances. *See Kurker,* 689 N.E.2d at 837 (citing *Nelson v. Nason,* 343 Mass. 220, 177 N.E.2d 887 (1961) and three federal decisions).

Uncertainty of the validity of § 876(b) in Massachusetts aside, Ring opposes the Estate's reliance on this theory because "causation is still an element of the plaintiff's case." Defendant James A. Ring's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss ("Def.Reply") at 6. Indeed, the commentary to the RESTATEMENT itself states that one who encourages or provides assistance is a tortfeasor if such encouragement or assistance "is a substantial factor in *causing* the *resulting tort* [.]" RESTATEMENT (SECOND) OF TORTS, § 876, cmt. (d). Ring's position is that the acts he is alleged to have committed in furtherance of the conspiracy—violating the Attorney General Guidelines, failing adequately to investigate Halloran's death, and the like, as alleged in the complaint at paragraphs 371–380—could not have caused or have been a substantial factor in the causation of the torts actionable under Mass. Gen. L. c. 229 §§ 2 & 6.

■ The Estate argues that Ring misconstrues the nature of its claim, and that the object of the conspiracy alleged was the protection of Bulger and Flemmi at all costs. This argument, however, suffers two fatal defects: first, the actual harm to Halloran alleged in the complaint is his wrongful death (in the case of count I) and his conscious suffering (in count II). Clearly, no claim can be made that Ring entered a "common plan" to achieve Halloran's death, and in fact no such claim is presented. The second flaw in the Estate's argument is that the Estate is not able to show that the goal of protecting law enforcement informants is wrongful or unlawful. (Indeed, I would posit that law enforcement agents regularly form common plans to protect their sources as a matter of good investigative practice.) Moreover, the Estate has not been able to

produce any authority for the argument that Ring's own alleged transgressions (flouting of the Attorney General's guidelines for dealing with informants) give rise to a private right of action, despite the Estate's repeated assertion that this is "tortious conduct" on Ring's part, *see, e.g.,* Pl. Opp. at 6, 8. In essence, the Estate seeks to extend liability for an actionable tort (wrongful death and conscious suffering) to a defendant against whom it cannot plead direct liability for that tort, by alleging that the underlying tort was committed in the furtherance of a civil conspiracy to achieve a wholly different end. No action will lie against Ring, however, for engaging in a conspiracy that resulted in torts actionable under the Massachusetts wrongful death statute. The Estate has not pleaded a conspiracy to cause the harms actionable under that statute, and the conspiracy it has pleaded does not give rise to a cause of action on Halloran's behalf. Accordingly, Ring's motion to dismiss counts I and II is GRANTED.

### C. Count XI.

Count XI is also a conspiracy claim, predicated in this instance not on rights vindicable under Massachusetts law but on the rule in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), which allows suit against individual federal officers for damages arising out of violations of constitutionally guaranteed rights. The complained-of Fourth and Fifth Amendment violations and "extreme and severe fright, shock, fear, horror, emotional distress and wrongful death", Compl. ¶ 464, experienced by Halloran all resulted from actions taken before Ring joined the FBI's Boston office. As with the wrongful death claims stated under Massachusetts law, the Estate resists Ring's motion to dismiss, arguing that the law of conspiracy allows Ring to be held liable for acts of co-conspirators

that took place before he joined the conspiracy. *See* Pl. Opp. at 9.

As discussed above, the object of the alleged conspiracy in itself cannot be said to have been unlawful or tortious. Indeed, the *Bivens* claim asserted is for injuries that were not themselves the object of the conspiracy, and Ring's actions cannot be shown to have been a proximate cause of Halloran's alleged constitutional injuries. As with the wrongful death claims, the Estate's attempt to add one deficient theory (a *Bivens* claim against Ring, which must fail for lack of causation) to another (a civil conspiracy claim, which must fail because the goal of the alleged conspiracy does not give rise to an independent cause of action) to come up with one whole cause of action is unavailing. Count XI is DISMISSED as asserted against defendant Ring.

### D. Count XII.

In Count XII, the Estate relies on *Bivens* to assert a claim against Ring for interference with its First and Fifth Amendment rights to access the courts. Ring relies on a recent Supreme Court decision, *Christopher v. Harbury*, 536 U.S. 403, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), in moving to dismiss this claim. In *Harbury*, the Court discussed the pleading standard required to state a claim for a so-called "backward-looking" denial of right of access to courts. To survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), a plaintiff must allege an underlying cause of action that has been lost through inappropriate actions by government officials, as well as a "remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Harbury*, 536 U.S. 403, 415, 122 S.Ct. 2179, 2187, 153 L.Ed.2d 413. The complaint asserts that the actions of the defendants

"prevented the plaintiff from learning the identities of those involved in Halloran's death, precluding it from seeking civil judgment against those responsible for his death...resulting in lost damages" because the "Estate was deprived its right to seek a civil remedy from 1982 to the date of this Complaint[.]" Compl. ¶ 474. Under the rule announced in *Harbury,* this count of the complaint is not specific enough either with reference to the lost cause of action or to the remedy sought that could not be awarded in connection with any other claim. I therefore DISMISS Count XII against Ring for failure to state a claim on which relief may be granted.

### E. Count XIII.

The final count in the complaint asserts a claim for reasonable attorneys' fees and costs of suit. Because all of the other claims against Ring have been dismissed, the Estate cannot recover the costs of pursuing its suit against Ring. Count XIII as asserted against Ring is DISMISSED.

### IV. Conclusion

For the reasons stated above, defendant James A. Ring's motion to dismiss each count of the complaint asserted against him is GRANTED.

SO ORDERED.