NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-520

JOSEPH E. SZAWLOWSKI, trustee,[1]

vs.

GEORGE W. PRICE & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Joseph E. Szawlowski, trustee of the Stan and Mary Ellen Szawlowski Family Trust (trust), appeals from a judgment that (i) dismissed without prejudice the plaintiff's claims against defendants Christopher Maffucci and Don J.J. Cordell, attorneys at the law firm Casner & Edwards LLP; (ii) dismissed with prejudice the claims against the other defendants, which include attorneys George W. Price, Julie

_____

[1] Of the Stan and Mary Ellen Szawlowski Family Trust.

[2] Julie Bryan, Don J.J. Cordell, Christopher Maffucci, Casner & Edwards LLP, Jeffrey Robins, Joseph Lipschitz, Page Schroder, and Saul Ewing Arnstein & Lehr LLP. As is our custom, the parties' names appear as they do in the complaint, although we note that defendants Robins, Lipschitz, and Schroder indicate their names are spelled "Jeffrey Robbins," "Joseph Lipchitz," "Paige Schroeder."

Bryan, and the Casner & Edwards firm itself (remaining Casner defendants), as well as attorneys Jeffrey Robins, Joseph Lipschitz, Page Schroder, and the law firm Saul Ewing Arnstein & Lehr LLP (Saul Ewing defendants); and (iii) ordered the plaintiff to pay the Saul Ewing defendants $62,500 in attorney's fees pursuant to the anti-SLAPP statute, G. L. c. 231, § 59H. The plaintiff also appeals from an order requiring him to pay $7,500 in sanctions for suing Maffucci and Cordell without a good-faith basis (sanctions order).

For the reasons that follow, we affirm the sanctions order and the portion of the judgment that dismissed the claims against Maffucci and Cordell. We also modify the judgment to reflect that the claims against the Saul Ewing defendants are dismissed under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), and reverse the award of attorney's fees and costs to those defendants pursuant to the anti-SLAPP statute. Finally, we vacate so much of the judgment as dismissed the claims against the remaining Casner defendants and remand for further proceedings consistent with this memorandum and order.

Background. In reviewing the judgment of dismissal under rule 12 (b) (6), we accept as true the well-pleaded facts as alleged by the plaintiff in support of his claims and draw all reasonable inferences in the plaintiff's favor. See Shaw's

2

Supermkts., Inc. v. Melendez, 488 Mass. 338, 339 (2021).  In reviewing the judge's allowance of the Saul Ewing defendants' anti-SLAPP special motion to dismiss, we summarize the facts as derived from the pleadings and attached documentary evidence before the Superior Court.  See Bristol Asphalt, Co. v. Rochester Bituminous Prods., Inc., 493 Mass. 539, 542 (2024) (Bristol Asphalt).

This litigation concerns a family potato farming business in Northampton.  The business now operates through four closely-held corporations and one limited liability company (collectively, the companies).  For years, the companies were owned by the founder's four grandsons:  Frank, Chester, John, and Stanley Szawlowski.  In 2009, the grandsons entered into a shareholder stock redemption agreement (SSRA) to restrict the transfer of shares in the companies, provide a mechanism for purchasing a deceased shareholder's interest, and establish a method for valuing shareholder interests.  In 2016, they executed an equity agreement that valued each grandson's share at $4 million.  Following John's death in 2016 and Stanley's death in 2020, the companies are now owned by Frank and Chester (directly or through family trusts), and the trust that holds the interests previously belonging to Stanley.

3

In 2018, represented by the remaining Casner defendants (i.e., Price and Bryan), Frank and Chester tried to amend the SSRA in an attempt to "freeze out" Stanley and the trust and deprive them of the full value of their interest in the companies. According to the plaintiff, these defendants "colluded and conspired" with Frank and Chester, drafted an amendment and related written consents "that devalue [m]inority interest and altered the corporate agreements and structure in violation of the fiduciary duties and in violation of the contractual rights," and "arranged for a shareholder meeting without notice to Stanley for the purpose of execution of those documents." After Stanley and the trust were notified of the amendment, they threatened litigation against Frank, Chester, and the companies. The plaintiff eventually filed a shareholder lawsuit in the Superior Court against Frank, Chester, and the companies challenging the validity of the amendment. The companies retained the Saul Ewing defendants to represent them in the litigation; the remaining Casner defendants represented Frank and Chester. In 2020, while the shareholder action was pending, Chester noticed a special shareholder meeting at which the 2018 SSRA amendment was ratified; Frank and Chester voted for ratification, and the plaintiff voted against it.

In 2021, the plaintiff brought this action against the defendant attorneys and law firms, asserting claims for conspiracy, breach of fiduciary duty, aiding and abetting tortious conduct, and intentional interference with contractual or business relations. The defendants moved to dismiss all claims under the anti-SLAPP statute and rule 12 (b) (6). The plaintiff voluntarily dismissed the claims against Maffucci and Cordell.

In an order dated November 28, 2022, the judge denied the remaining Casner defendants' anti-SLAPP special motion to dismiss because they failed to show that the claims against them are based solely on petitioning activity. Nevertheless, the judge allowed their motion to dismiss under rule 12 (b) (6) on the ground that the claims are barred by the litigation privilege. The judge also stated that, in the alternative, dismissal was proper because the plaintiff failed to plausibly allege that the remaining Casner defendants caused the trust any compensable injury. The judge allowed the Saul Ewing defendants' anti-SLAPP special motion to dismiss, reasoning that their representation of the companies in the shareholder litigation and efforts to settle or otherwise resolve that litigation were protected petitioning activity, and that the plaintiff failed to show that the Saul Ewing defendants'

5

petitioning activity lacked factual support or any arguable legal basis, or that the plaintiff's claims were not brought primarily to chill legitimate petitioning activities.

In an order dated December 22, 2022, the judge allowed a motion for sanctions by Cordell, Maffucci, and Casner & Edwards (to the extent that the plaintiff sought to hold the firm liable for the actions of Cordell and Maffucci). The judge concluded that the plaintiff's claims against Cordell and Maffucci warranted sanctions under G. L. c. 231, § 6F, and Mass. R. Civ. P. 11 (a), as appearing in 488 Mass. 1403 (2021), because they "were wholly insubstantial, frivolous and not advanced in good faith." The judge ordered the trustee, individually, to pay $7,500 for attorney's fees and costs incurred in preparing those defendants' motion to dismiss and sanctions motion.

In an order dated January 30, 2023, the judge denied the plaintiff leave to amend his complaint because he did "nothing to show that he has a meritorious motion to amend that would cure the defects identified in the Court's prior ruling." The judge also dismissed with prejudice the claims against all the defendants not voluntarily dismissed, and further ordered the plaintiff to pay the Saul Ewing defendants $62,500 in attorney's fees and costs under the mandatory fee-shifting provision of the anti-SLAPP statute.

6

On January 30, 2023, judgment entered as to the dismissal orders and award of attorney's fees and costs pursuant to the anti-SLAPP statute.  On February 21, 2023, the plaintiff filed a notice of appeal purporting to appeal from not only the judgment, but also a variety of orders that predated the judgment, including the sanctions order of December 22, 2022.

Discussion.  1.  Sanctions order.  The judge allowed the motion for sanctions by Cordell, Maffucci, and Casner & Edwards pursuant to G. L. c. 231, § 6F, and rule 11 (a).  General Laws c. 231, § 6G, provides that an appeal from an order that awards attorney's fees under G. L. c. 231, § 6F, must be taken to a single justice of this court "within ten days after receiving notice of the decision thereon."  Because the plaintiff did not appeal from the judge's sanctions order until two months later and, when he did, sought review in the wrong forum, his appeal from the order, to the extent it is based on G. L. c. 231, § 6F, requires dismissal.  See Holmes v. Andersen, 94 Mass. App. Ct. 472, 474-476 (2018).  See also Ben v. Schultz, 47 Mass. App. Ct. 808, 814 (1999) (motion under G. L. c. 231, § 6F, is collateral proceeding, "not a distinct cause of action resulting in a judgment").

To the extent the order was based on rule 11 (a), we discern no abuse of discretion.  See Van Christo Advertising,

7

Inc. v. M/A-COM/LCS, 426 Mass. 410, 417 (1998). The judge concluded that the trustee, himself an attorney, willfully violated rule 11 (a) by filing claims on behalf of the trust against Cordell and Maffucci without having "a subjective good faith belief that the pleading was supported in both fact and law." Id. at 416. Although the plaintiff argues that it was reasonable to infer from these attorneys' representation of the companies in other matters that they were also involved in an alleged conspiracy to draft the SSRA amendment, he made no such allegation in the complaint, conclusory or otherwise, but rather "asserted claims against them based solely on their proper and lawful representation of clients in civil proceedings." Furthermore, the plaintiff refused to voluntarily dismiss his claims against these defendants until after they served their motions to dismiss. The award of $7,500 in sanctions was appropriate in light of the attorney's fees and costs these defendants incurred in responding to the plaintiff's baseless claims against them.

2. Dismissal of the claims against the remaining Casner defendants. The judge dismissed the complaint against the remaining Casner defendants under rule 12 (b) (6) for failure to state a claim for which relief may be granted. "We review the grant of a motion to dismiss de novo, accepting as true all

8

well-pleaded facts alleged in the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor, and determining whether the allegations plausibly suggest that the plaintiff is entitled to relief." Lanier v. President & Fellows of Harvard College, 490 Mass. 37, 43 (2022).

We disagree with the judge's conclusion that the plaintiff's claims against the remaining Casner defendants are barred by the litigation privilege. The litigation privilege precludes civil liability based on "statements by a party, counsel or witness in the institution of, or during the course of, a judicial proceeding," Sriberg v. Raymond, 370 Mass. 105, 108 (1976), as well as statements "preliminary to litigation" that relate to the contemplated proceeding. Id. at 109. For example, in Bassichis v. Flores, 490 Mass. 143, 144 (2022), the litigation privilege applied because the defendant attorney was representing his client in a divorce proceeding. In Sriberg, supra, the Supreme Judicial Court applied the privilege to statements in a demand letter because they related to a proceeding that was "contemplated in good faith and . . . under serious consideration." The litigation privilege does not, however, "encompass . . . attorneys' conduct in counselling and assisting their clients in business matters generally." Kurker v. Hill, 44 Mass. App. Ct. 184, 192 (1998). In Kurker, we

9

declined to apply the privilege to shield attorneys who allegedly "engaged in a conspiracy to undervalue the assets and freeze out the plaintiffs." Id.

Here, no litigation was underway or even at a "preliminary" stage when the remaining Casner defendants began to work with Frank and Chester on the 2018 SSRA amendment and related written consents. These defendants were not preparing to initiate litigation against Stanley or the trust, but rather, it is alleged, engaged in an effort to deprive them of the full value of their interest in the companies. It is immaterial whether they anticipated that Stanley and the trust might initiate litigation in response, or prepared the amendment with the aim of defeating such a lawsuit; counselling clients on business matters does not become "litigation privileged" simply because a counselled action might result in an injured party filing suit.

We also disagree with the judge's conclusion, in the alternative, that the claims against the remaining Casner defendants warrant dismissal because the plaintiff failed to plausibly allege that those defendants caused the trust any compensable injury. The parties do not dispute that injury or damages is an element of each of plaintiff's claims. See Baker v. Wilmer Cutler Pickering Hale & Dorr LLP, 91 Mass. App. Ct. 835, 842, 847-848 (2017) (breach of fiduciary duty, aiding and

abetting, civil conspiracy).  See also Blackstone v. Cashman,
448 Mass. 255, 260 (2007) (intentional interference with
contractual or advantageous relationship).  Such claims need not
be pleaded with particularity, see Mass. R. Civ. P. 9 (b), 365
Mass. 751 (1974), but rather must be supported by factual
allegations "enough to raise a right to relief above the
speculative level" (citation omitted).  Iannacchino v. Ford
Motor Co., 451 Mass. 623, 636 (2008).

In his decision, the judge concluded that although each
count in the complaint contains a conclusory allegation of
damages, "the complaint alleges no facts suggesting that it is
true."  The plaintiff alleges, however, that through the 2018
SSRA amendment and written consents, the remaining Casner
defendants engaged in a conspiracy with Frank and Chester to
overcome contractual protections for minority shareholders and
undervalue their shares.  Those allegations are sufficient to
plausibly suggest an entitlement to relief for purposes of rule
12 (b) (6) and allow the claims to proceed to discovery.  See
Baker, 91 Mass. App. Ct. at 842-849; Kurker, 44 Mass. App. Ct.
at 189-190, 192.  At the motion hearing, the judge suggested
that the plaintiff's claim for breach of fiduciary duty faced "a
catch 22 . . . in reverse," whereby there would be no damages if
"the claim fails in liability," but if Frank and Chester are

11

"found to have breached their fiduciary duty," the 2018 SSRA amendment would be unenforceable and "there wouldn't actually be damages."  Although we acknowledge that the doctrine of issue preclusion or collateral estoppel could bar the present claim against the remaining Casner defendants if a judgment enters in favor of Frank and Chester in the shareholder litigation, see Miles v. Aetna Cas. & Sur. Co., 412 Mass. 424, 427 (1992), that is not a basis for dismissal at this stage.  Rather, "[t]he only facts appropriate for consideration in deciding a motion to dismiss are . . . those drawn from factual allegations contained within the complaint or within attached exhibits."  Eigerman v. Putnam Invs., Inc., 450 Mass. 281, 285 n.6 (2007), citing Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000).  We express no view on how developments in the shareholder litigation that may have occurred or will occur since the filing of the present complaint might affect this case.

We similarly reject the remaining Casner defendants' alternative argument that the plaintiff's claims should be dismissed for failure to allege a breach of fiduciary duty. "Whether such a fiduciary relationship exists in a particular case is largely a question of fact."  Baker, 91 Mass. App. Ct. at 837.  Applying Baker, and drawing all reasonable inferences in the plaintiff's favor, the allegations support a plausible

12

inference that the remaining Casner defendants, acting as counsel for the companies, breached a fiduciary duty owed to Stanley and the trust, as well as aided, abetted, and conspired with Frank and Chester in breaching their fiduciary duties to Stanley and the trust.  See Baker, supra; Kurker, 44 Mass. App. Ct. at 189-190, 192.  To the extent that the remaining Casner defendants contend that they did not actually represent the companies in connection with the 2018 SSRA amendment, or that the facts in Baker and Kurker are distinguishable from what happened here, those arguments can be addressed on a developed factual record following discovery.

3.  Dismissal of the claims against the Saul Ewing defendants.  We review the judge's ruling on the Saul Ewing defendants' anti-SLAPP motion de novo.  Bristol Asphalt, 493 Mass. at 560-562.  In Bristol Asphalt, the Supreme Judicial Court revised the framework used to assess special motions to dismiss under G. L. c. 231, § 59H.  See Bristol Asphalt, supra at 554-560.  As the court explained in a companion case, this revised framework applies to all cases in which an anti-SLAPP motion or appeal remains pending as of the issuance of the rescript in Bristol Asphalt.  See Columbia Plaza Assocs. v. Northeastern Univ., 493 Mass. 570, 578 (2024).  At the first stage of the framework, the proponent of the special motion to

13

dismiss "must show that the challenged count has no substantial basis in conduct other than or in addition to the special motion proponent's alleged petitioning activity." Bristol Asphalt, supra at 555-556. If the proponent cannot make this threshold showing, the special motion to dismiss must be denied. See id. at 556.

We disagree with the judge's conclusion that, in addition to their representation of the companies in litigation, the Saul Ewing defendants' other alleged actions "also constitutes petitioning activity, because they all involved communications undertaken in an attempt to settle or otherwise resolve the ongoing litigation by the Trust against Frank, Chester, and the companies." Although it is true that the "[c]ommencement of litigation" is petitioning activity, 477 Harrison Ave., LLC v. JACE Boston, LLC, 483 Mass. 514, 520 (2019), as are settlement discussions between parties to ongoing litigation, see Plante v. Wylie, 63 Mass. App. Ct. 151, 159 (2005), the complaint alleges conduct by the Saul Ewing defendants that went beyond efforts to prosecute or settle litigation. Specifically, these defendants allegedly "drafted additional purported corporate documents, purporting to effectuate the same or similar amendment to the 2009 SSRA as the 2018 SSRA, and ratifying the actions as they had alleged had been enacted by consent in 2018, but this time

14

. . . through a special meeting."  The drafting of corporate documents to effect or ratify changes in contractual rights is not petitioning activity, and the fact that such conduct may have been motivated by an attempt to resolve or narrow ongoing litigation is irrelevant to the anti-SLAPP analysis.  See Bristol Asphalt, 493 Mass. at 555-556; 477 Harrison Ave., LLC v. JACE Boston, LLC, 477 Mass. 162, 168 (2017).  See also G. L. c. 231, § 59H.  Because the plaintiff's claims against the Saul Ewing defendants were not "based solely on its petitioning activity," it was error to allow their special motion to dismiss and award them attorney's fees and costs under the anti-SLAPP statute.  See Columbia Plaza Assocs., 493 Mass. at 578-579.

Nevertheless, we agree that dismissal of the Saul Ewing defendants was appropriate because they are shielded by the litigation privilege, which they asserted as an alternative basis for dismissal in their rule 12 (b) (6) motion.  See Gabbidon v. King, 414 Mass. 685, 686 (1993) ("It is well established that, on appeal, we may consider any ground apparent on the record that supports the result reached in the lower court").  The litigation privilege "applies regardless of malice, bad faith, or any nefarious motives on the part of the lawyer so long as the conduct complained of has some relation to the litigation" (citation omitted).  Bassichis, 490 Mass. at

15

150.  Here, the Saul Ewing defendants' alleged conduct involved representation of the companies in the shareholder or other litigation or efforts to resolve or narrow the issues in those lawsuits.  In particular, the 2020 special shareholder meeting was called to address the plaintiff's claim, raised in his shareholder lawsuit, that the 2018 written consents were invalid because he did not receive prior notice and the actions were not voted on at a shareholder meeting.  The litigation privilege shields the Saul Ewing defendants from liability because their involvement in that special shareholder meeting related directly to "the preparation or conduct of litigation."  Id. at 158.  By contrast, as discussed supra, the privilege does not shield the remaining Casner defendants because no dispute or threat of litigation existed when they began to work with Frank and Chester on the 2018 SSRA amendment and written consents; rather, their alleged conduct involved "counselling and assisting their

clients in business matters generally."  Id., quoting Kurker, 44
Mass. App. Ct. at 192.[3,4]

Conclusion.  The order dated December 22, 2022, allowing
the motion for sanctions is affirmed.  So much of the judgment
dated January 30, 2023, as dismissed the claims against Cordell
and Maffucci is affirmed.  So much of the judgment as dismissed
the claims against the Saul Ewing defendants is modified to
reflect that dismissal is for failure to state a claim and that
portion of the judgment, as so modified, is affirmed.  So much
of the judgment as awarded the Saul Ewing defendants attorney's
fees and costs under the anti-SLAPP statute is reversed.  So
much of the judgment as dismissed the claims against the
remaining Casner defendants is vacated, and the matter is

---

[3] Because we vacate the judge's decision dismissing the
plaintiff's claims against the remaining Casner defendants, we
need not address his argument that the judge abused his
discretion by denying him leave to amend those claims.  As for
the Saul Ewing defendants, we conclude that the judge properly
exercised his discretion in denying the motion to amend.  The
plaintiff moved to amend only after the judge allowed the
motions to dismiss and did not submit a proposed amended
complaint or otherwise explain how his amended pleading would
have merit.  See Mass. R. Civ. P. 15 (a), 365 Mass. 761 (1974)
(plaintiff not entitled to amend as matter of right after order
of dismissal); Johnston v. Box, 453 Mass. 569, 582 (2009).

[4] The defendants' requests for appellate attorney's fees are
denied.

remanded for further proceedings consistent with this memorandum and order.

So ordered.

By the Court (Milkey, Hodgens & Toone, JJ.[5]),

Clerk

Entered: August 16, 2024.

---

[5] The panelists are listed in order of seniority.